BRINLEY *et al., Plaintiffs in Error,* v. FORSYTHE.

A case where a Deed was Presumed. A deed from Juan Arenton to Jonathan Hillebran was the only link wanting to complete a chain of title from a concession by the Spanish Lieutenant-Governor, A. D. 1780, to the passage of the legal title from the United States in 1874. Hillebran was the brother-in-law of John Herrington, of whose name Arenton was probably a perversion, and procured a deed dated May 24th, 1800, from Robideaux, under which Arenton acquired title. At the execution of this deed Arenton was not present, although his presence was therein recited; and, contrary to the Spanish custom, his name was not signed thereto. Hillebran's name was signed to the deed, and he at once went into possession of the land thereunder. In 1808 he presented a claim to the land before the board of commissioners, in his own name as assignee of Robideaux; in 1811 he presented the claim in the name of John Herrington, as such assignee. In the first case the claim was confirmed to the legal representatives of Robideaux; and in the latter to the legal representatives of Dorian, the original grantee. Actual possession was the main basis for the grant and confirmation under the Spanish law and the law of the United States. Three days after

the latter confirmation, Hillebran conveyed the land in his own name. From the year 1800 until his death in 1864, Herrington lived in the immediate vicinity of the land, except for a period of seven or eight years, and was never heard to make any claim to the land whatsoever. Hillebran, and those claiming under him, had been in possession for nearly seventy-five years; *Held*, that the deed to Arenton was a mistake, or else Arenton had conveyed to Hillebran and that, although the facts were singular and difficult to be explained, for the purpose and upon the principle of quieting the possession, the court sitting as a jury, was authorized to presume, and should have presumed, such a conveyance.

*Error to Jefferson Circuit Court.*—HON. LOUIS F. DINNING, Judge.

*Thos. C. Fletcher* for plaintiffs in error.

*Edw. Branch Cowan* for defendant in error.

NAPTON, J.—This suit was brought by plaintiffs on the 19th day of May, 1875, as representatives of Pierre Dorian, to recover part of survey 1303. In 1780 Lieutenant-Governor DeLeyba granted to Peter Dorian a tract of land on the Mississippi of four arpens on the river, and forty arpens deep, at the mouth of Little Rock Creek. Upon the death of Dorian, this land was conveyed in 1799 to Joseph Robideaux. Thus far there is no dispute. In the year 1800 a deed is produced, made before the Lieutenant-Governor DeLassus by Robideaux to Juan Arenton. This deed is signed by Joseph Robideaux and Jonathan Hillebran and by the Lieutenant-Governor, Joseph Hortiz, and P. Lafillard as witnesses, and recites that Arenton was present, though his name is not signed as grantee. The plaintiffs then read a certified copy from the office of the recorder of land titles on the 27th day of October, 1808, in which record of the board of commissioners, consisting of Lucas, Penrose and Bates, is a recital that Jonathan Hillebran, assignee of Joseph Robideaux, claiming 240 arpens of land, situate on Little Rock Creek, produces to the board a plat of survey by Soulard, dated 11th day of

January, 1806, certified to have been received for record 25th day of February, 1806, a concession from DeLeyba for this land in March, 1780, to Dorian, and proof that Dorian inhabited and cultivated and claimed said land and died on it; and that claimant Hillebran inhabited and cultivated the land eight years before. On June 28th, 1810, the board confirmed this claim to *the legal representatives of Joseph Robideaux.* The plaintiffs then produced copies of surveys made by Soulard and Langham, the first made at the request of Jonathan Hillebran, who claimed the same as assignee of Joseph Robideaux. This survey was July 11th, 1806. The plaintiffs also produced survey 1303 by Langham made on April 1st, 1818, and declared to be for the legal representatives of Peter Dorian; then a conveyance from Jonathan Hillebran to Mathias Brinley dated 9th day of December, 1811, for the same 240 arpens at Little Rock Creek, certified by the magistrate to have been signed, sealed and delivered, though no seal appears; then patent certificate of the commissioner, dated 28th day of June, 1810, No. 394, to the legal representatives of Joseph Robideaux under Dorian. The plaintiffs then read in evidence the inventory of the land of Mathias Brinley made in July, 1823, which included this tract at the mouth of Little Rock Creek, fronting on the river six arpens, and running forty arpens west; bought of Jonathan Hillebran. The plaintiffs then gave evidence that Mathias Brinley resided on the Dorian survey at the time of his death in 1823, and had lived there for many years previous thereto; and that Brinley left five children, whose names were Elizabeth, Mary, Jacob, Mathias, Jr., and Michael; that Elizabeth married Wm. McMillan; that McMillan administered on the estate and resided on the land after the death of old Mathias; that he made his final settlement in March, 1828; that Jacob removed to Arkansas before the death of his father, and died in Texas in 1861, leaving the plaintiffs the only descendants of said Jacob. It was admitted that McMillan paid taxes on the whole Dorian survey up to

1828, and afterwards claimed and paid taxes on three-fifths of the survey up to 1846; that McMillan had bought the interests of Mathias, Jr., and Michael; that Mrs. Byrd, who was Mary Brinley, retained her interest, and on her death it descended to her heirs; and that in 1846 Skelton Richardson acquired all the title of McMillan and Mrs. Byrd's heirs, and claimed, and was in possession of the whole tract; that about 1849, John Eps Cowan acquired that part of said survey described in the petition by deed from Richardson; that said deed purported to convey the whole of said part, and to warrant the title, and Cowan went into possession, and defendant has acquired by intermediate conveyances the title of Cowan; that defendants' deeds are warranty deeds, and purport to convey the whole of said seventy arpens; that Brinley, before his death, and McMillan from 1828, and Richardson from 1847, and Cowan from 1849, and those under him since, have had possession and paid taxes on said seventy arpens, and since 1847 claimed the whole of it in fee simple, and all under the paper title derived from Hillebran through Brinley. The plaintiff claims only an undivided fifth of the land in controversy.

The evidence offered and read by defendant consisted of the same papers produced by plaintiff, including the deed from Robideaux to Arenton; defendant then read besides a confirmation by the old board dated December 6th, 1811, as follows : Friday, December 6th, 1811. Board met—present J. B. C. Lucas, Clement B. Penrose, Frederick Bates. Certificate 1303. John Herrington, assignee of Joseph Robideaux, assignee of Peter Dorian, claiming 240 arpens of land situate at Little Rock on the Mississippi River, district of St. Louis, produces a concession from Fernando DeLeyba, Lieutenant-Governor, to Peter Dorian, dated 31st day of March, 1780, record of a conveyance from Robideaux to claimant dated 24th day of May, 1800. A majority of the board, John B. C. Lucas, commissioner, dissenting, grant to the legal representatives of Peter Dor-

ian 240 arpens of land, under the provisions of the 2d section of the act of Congress, entitled an act respecting claims to land, and passed 3d day of March, 1807, and order that the same be surveyed conformably to possession, survey at the expense of claimant.  Board adjourned till Monday next, 9 o'clock a. m.  Signed, John B. C. Lucas, Clement B. Penrose, Frederick Bates.

The defendant then read commissioners' certificate No. 1303, dated December 6th, 1811, as follows:  "Commissioners' certificate No. 1303, December 6th, 1811.  We the undersigned, commissioners for ascertaining and adjusting the titles and claims to land in the territory of Louisiana, have decided that Peter Dorian, original claimant, or his legal representatives, are entitled to a patent under the provisions of the 2nd section of the act of Congress, entitled 'An act respecting claims to land in the territories of Orleans and Louisiana,' passed the 3rd day of March, 1807, for 240 arpens of land situate in the district of St. Louis, Little Rock, on the Mississippi, and order that the same be surveyed conformably to possession.  By virtue of ten consecutive years possession prior to the 30th day of December, 1803.  Signed, J. B. C. Lucas, Clement B. Penrose, Frederick Bates."

The defendant then read certificate of survey made April 1st, 1818, by Langham, which has already been recited, and then read Recorder Bates' certificate dated October 30th, 1822, as follows:  "No. 49.  Office of the Recorder of Land Titles.  St. Louis, October 30th, 1822.  It is hereby, certified that pursuant to acts of Congress respecting claims to land in the territories of Orleans and Louisiana and territory of Missouri, the claim of Peter Dorian's legal representatives for the quantity of 240 arpens, No. 1303, has been duly confirmed, and that on the 1st day of April, 1818, the said tract was regularly surveyed, containing 204 acres and 2-100ths of an acre, as per plat herewith, authenticated by the United States surveyor's office, and designated in the connected plat as No.

1303. Now, therefore, be it known, that the said Peter Dorian's legal representatives are entitled to receive a patent for the tract above mentioned. Signed, Frederick Bates."

The act of Congress of June 6th, 1874, was read on both sides; and the defendant then read a deed from J. C. Herrington and others to John Eps Cowan dated 14th day of June, 1878, made after the institution of this suit. Joshua Herrington was then examined, who stated that he was sixty-four years old, and that John Herrington was his father; that his father came to Missouri in 1799; that he lived at a place near Pevely, some five or six miles south of the Dorian claim; that in 1811 John Herrington went to Arkansas; never lived on the land in controversy; that the witness, who was his son, never heard from his father, or any of the family, or from any one else, that his father ever resided on the land in controversy; that he was born at a place, as he heard, south of the Dorian claim; that he understood from his father that he staid seven or eight years in Arkansas when he went there in 1811. This witness stated that he never knew of any John Herrington except his father. When John Herrington came back here he remained in this (Jefferson) county till his death in March, 1864. From 1822 he lived sixteen or seventeen miles from the Dorian survey till his death. That Jonathan Hillebran married his father's sister, and attended to his father's business when the latter went to Arkansas; that Hillebran was a man of some business tact, and could read and write, but his father could not write his name; that Hillebran died in Jefferson county at a very advanced age. This witness stated that he never heard his father claim the land in controversy, and never heard that he had any claim; that he gave the deed to Major Cowan, when asked for it, but was not aware that he had any title whatever to it.

The question presented by this case is a novel one, notwithstanding the various decisions in this court in regard to confirmations under the old board of commissioners

The facts are singular and difficult to be explained. It is
very clear from the evidence that Jonathan Hillebran, and
those claiming under him, actually occupied this land from
1800 up to the commencement of this suit; and that de-
fendants occupied under the same title. It is exceedingly
difficult to account for the deed to Arenton, or Herring-
ton, in 1800, from Robideaux. The fact appears plainly
that Hillebran took possession under the deed, and that
Herrington never was in possession, though living within
a few miles of the Dorian claim. It may be acknowledged,
that this deed to Herrington conveyed the legal title, so
far as it could be conveyed at that time. It is clear that
Hillebran procured this deed and took possession of the
land. Hillebran was the claimant, at first, of survey 394,
made by Soulard, but afterwards he personated Herrington,
and made his claim in Herrington's name, and all this time
the claim was confirmed to the assignee of Robideaux or
Dorian. There is no difficulty in concluding from the evi-
dence that Hillebran, and those who derived title from
him, were in possession of this land for seventy-five years.
All the difficulty in this case grows out of the conveyance
made before DeLassus, in 1800, from Robideaux to Aren-
ton, which seems to show an outstanding title in Arenton
or his heirs. That Arenton meant Herrington, there is no
doubt, and could not be a Spanish perversion of Hillebran.
It seems equally clear that Arenton, or Herrington, was
not present when that transfer was made, for, contrary to
the custom of the Spanish officers, Arenton's name was not
signed to the paper, although he is recited to have been
present, but Hillebran signs as grantee, and Robideaux as
grantor. Why Hillebran should have personated his
brother-in-law, Herrington, and had this deed or convey-
ance made to Herrington, or Arenton, is nowhere explained,
and probably at this date admits of no explanation. One
fact is clear, that Hillebran took possession of this land
immediately on the transfer from Robideaux, and con-
tinued in possession till he sold to Brinley in 1811; and

that Brinley's possession continued till his death in 1823; and that the defendant's title was acquired from the Brinley heirs; so that seventy-five years continuous possession had been, at the trial, in Hillebran, and those claiming under him. The defendant had all the title he has from Hillebran, except that after this suit was brought he procured a quit claim from the Herringtons, who at the same time disclaimed any title.

It is remarkable that three days after the confirmation on the application of Herrington, in 1811, who was probably then in Arkansas, Hillebran conveyed to Brinley. There is some mistake in this case, and we are unable to determine whether it originated in the first conveyance of Robideaux to Arenton, or Herrington. The latter, it is clear, never was in possession of the land, and Hillebran was. It is a case in which a jury might presume a deed from seventy-five years possession.

The plaintiffs and defendants both claim under the Hillebran title, and the deed of 1875 from Herrington's heirs cuts no figure in the case, especially when considered with the evidence given by Herrington. It is worthy of remark that the claim presented in 1811 in the name of Herrington, doubtless by Hillebran, was in all probability when John Herrington was in Arkansas. Why he submitted his claim to the board of commissioners, at first in his own name, and afterwards in the name of Herrington, is not explained by the evidence; but it is clear that Herrington never was in possession of the land, and never made any claim to it. He lived in the neighborhood, four or five miles south of it, up to 1811, and then went to Arkansas; and returned from Arkansas after seven or eight years' absence, and lived in Jefferson county till his death, and never, during all this time, spoke of any claim he had to the Dorian tract, either to his children or any one else. It is impossible to resist the conclusion that he was ignorant of any such claim, and knew nothing of what his brother-in-law, Hillebran, had done in his name. Con-

ceding that the title was in Herrington, or Arenton, a jury would be authorized to presume a deed.

The doctrine of *nullum tempus occurrit regi* has no application, since beyond doubt the title of Spain had passed to Robideaux, and the United States had confirmed this, and the only question before the United States commissioners was to whom Robideaux had conveyed. They never determined this question, but confirmed to his legal representatives. The dissent of Lucas evidently arose from this discrepancy, as Hillebran presented the claim. It was ultimately confirmed to the legal representatives of Dorian or Robideaux.

Actual possession was, as will be seen, the main basis of the confirmation and survey, under the Spanish law. Instead of four by forty arpens, the survey was of six by forty arpens, in accordance with possession; and Hillebran went into possession in 1800, and continued in possession till he sold to Brinley in 1811. All this time Herrington lived within a few miles of the tract; never made any claim to it during his life. It is impossible to conclude otherwise than that the deed to him was a mistake, or that he conveyed to Hillebran. At all events, this was a matter for the jury, or a court trying the facts when a jury was dispensed with.

In the case of the *Mayor v. Horner*, Cowp. 102, Lord Mansfield observed, "that if a foundation can be laid that a record or a deed existed and was afterwards lost, it may be supplied by the next best evidence to be had, or *if it cannot be shown that it ever existed*, yet *enjoyment* under a title which can only be by record is strong evidence to be left to a jury that it did once exist." In the case of *Eldridge v. Knott*, Cowp. 214, the court of Kings Bench adopted the same doctrine, and referring to the case of the *Mayor of Kingston v. Horner*, adds, "that it is not in such case that the court really thinks a grant has been made, because it is not probable that a grant should have existed without its being on record, but they presume the fact, *for the pur-*

*pose and from the principle of quieting the possession."* These cases are referred to with approval by Judge Tucker and Judge Roan, in *Archer, Admr. of Tanner, v. Sadler,* 2 Hen. & Munf. 370. These cases refer to a grant from the crown, but in the present case there is no question of a grant from Spain to Dorian, or of the subsequent transfer of Dorian's claim to Robideaux. All the difficulty originates in the transfer before the Lieutenant-Governor from Robideaux. The grantee or purchaser in that record is named Arenton. He is reported to have been present. It is conjectured that this name is a perversion of the name of Herrington, and this seems probable. But John Herrington does not sign the deed as grantee, and Hillebran does, and takes possession forthwith of the land. This possession continued for nearly seventy-five years. John Herrington, during this time, lived in the neighborhood of the grant, until his death in 1864, and never advanced any claim, and evidently was not aware that he had any. The presumption is, either that his name was inserted by mistake, or that he conveyed to Hillebran. Under the circumstances the jury, or the court sitting as such, was authorized to presume a deed. *McDonald v. Schneider,* 27 Mo. 405, 411; 1 Bay (S.*C.) 26; 6. Wend. 228; 1 Wash. R. 34; 6 East 213. The question then is, whether the plaintiffs, who beyond dispute had one-fifth of the Hillebran title, were not entitled to recover this from the defendants, who occupied under the same title.

No statute of limitations was pleaded, and indeed, since the suit was brought within one year of the passage of the act of Congress of June 6th, 1874, none could be pleaded. See the act of February 27th, 1874, (Sess. Acts 1874, p. 118, § 2). The judgment is, therefore, reversed and the cause remanded.

REVERSED.