Dessaunier v. Murphy.

--------+-•◦◦•+--------

DESSAUNIER AND OTHERS, Appellants, v. MURPHY, Respondent.

1. Where parties have been under disabilities so that their title to land, held
   adversely, has not been barred by the operation of the statute of limitations;
   *held*, that their failure to object to the adverse occupation, and to the ma-
   king of improvements, &c., will not estop them from setting up title.
2. The presumption of a deed of conveyance from facts and circumstances,
   without the production of the instrument or any direct proof of its exist-
   ence, and which juries are sometimes permitted, and, if the facts warrant,
   directed to draw, is a disputable presumption and not a conclusive presump-
   tion, or *presumptio juris et de jure.*

### Appeal from St. Louis Land Court.

This was an action in the nature of an action of ejectment
to recover possession of an undivided one-fifth part of a tract
of about forty arpens, situate in the Grand prairie common
field, near St. Louis. The land claimed was part of United
States survey No. 1589, under a confirmation by act of con-
gress of 29th April, 1816, to " William Bizette or his legal
representatives." Plaintiffs claim title as the legal representa-
tives of William Bizette. Defendant, in his answer, traverses
all the allegations of the petition, except that he admits being
in possession of a part of the land sued for, to which he asserts
title and ownership in himself; also sets up the statute of lim-
itations as a bar to a recovery. Upon the trial, it appeared in
evidence that the land sued for was confirmed to William Bi-
zette's representatives by act of congress of April 29, 1816;
and surveyed for said representatives, September, 1838, by
United States survey No. 1589; that at a public judicial sale

of the estate of Wm. Bizette, then deceased, his brother, Chas. Bizette, became the purchaser of the property in controversy, and a deed dated February 18, 1775, was made to him, conveying the same ; that before this sale, said Charles Bizette had married one Mary Papin, under a previous marriage contract, in which, among other things, it was stipulated that the parties thereto should " be one and common in all property moveable, and in acquisitions immoveable, conformably to the custom established in this colony," &c., and that " the said future consorts take each other with the property to them actually belonging, and that which may come to them in the future, and with all acquisitions and gains, either of moveable or immoveable, which property, from whatever side it might come, and in whatever place it may be located, shall enter entirely into the community, without exception or reserve ;" that Charles Bizette died in the year 1780, leaving, him surviving his wife Mary and three children, born at St. Louis, to-wit : Mary Louise, Paul and Antoine ; that the said Mary, widow of Chas. Bizette, married John B. Provenchere in the year 1781, and died January 22d, 1819 ; that said John B. Provenchere died about 1819 or 1820, the said Provenchere and wife living in the vicinity of St. Louis ; that said Mary Louise Bizette married Louis Boisse in the year 1795, and died in the year 1813, the said Louis dying October 12, 1819 ; that the said Mary Louise and Louis Boisse had five children, Emily, (the plaintiff, Emily Dessaunier,) Louise, (the plaintiff, Louise Deroine,) Margaret, (mother of the other plaintiffs,) Baptiste and Louis ; that the said Emily was born in May, 1799, and was married to J. B. Gaignon, June 22d, 1818, who died about nineteen or twenty years before the trial ; she afterwards married one Dessaunier, since deceased ; that the said Louise Boisse (plaintiff) married Francis Deroine, October 27, 1819, about twenty-two or twenty-three years before the trial, who died three or four years before the trial ; that she was fifty years old at time of trial ; that the said Margaret Boisse married Paschall Mallette, October 17, 1812, and died about twenty years before the

trial, leaving the following children, to-wit: 1. Paschall Mallette, (one of the plaintiffs,) aged 34 or 35 years at time of trial; 2. William, (also one of plaintiffs,) aged about 34 or 35 years at time of trial; 3. Frederick, (one of plaintiffs,) dead about nine months before trial; 4. Louis (plaintiff) aged at same time about 20 years; 5. Charles (plaintiff), aged at same time, 35 or 36 years; 6. Francis (plaintiff), aged at same time about 21 or 22 years; 7. Lize, who died about 22 years before the same time, leaving a child, who, soon after the death of its mother, was taken to France by its father, and had not been heard from for seven or eight years.

The defendant introduced in evidence archives No. 2371 and 2590. Archive No. 2371 purported to be an inventory taken in August 18, 1781, of the effects of the estate of Charles Bizette, deceased, taken under the authority of the lieutenant governor, upon a petition of the widow of said Bizette, praying that an inventory might be taken and the effects sold for the payment of debts and for the benefit of the children of the said Bizette, the widow being about to marry again. The tract of land in controversy was included in this inventory. Archive No. 2590 purported to be sale of the effects of Charles Bizette, deceased, under an order of and in the presence of lieutenant governor Cruzat. This sale took place September 17th, 1781, and was on a credit of one year. In the list of effects sold, there is no mention of the land in controversy in the present suit, or of any real estate. This archive also tended to show that John B. Provenchere, (who afterwards married the widow Bizette,) was appointed guardian and curator of the minor children of Charles Bizette, and authorized as such guardian and curator to take charge of all the effects of Charles Bizette. Defendant then offered in evidence a deed of J. B. Provenchere and Marie Christine, his wife, dated May 4th, 1811, to Joseph Brazeau, purporting to convey the land in controversy. In this deed, it is recited that Joseph Brazeau had purchased the said tract at the public sale which had been made after the decease of Charles Bizette; that the said conveyance was made in con-

sideration of the sum of forty dollars, which had been paid by
the said Brazeau, " as is evidenced by the receipt annexed to
these presents," which annexed receipt is as follows : " I, the
undersigned, give a full discharge of Mr. Brazo of the sum
which he owes to the estate of the late Vizet, for a piece of
land which was sold to him at public sale. St. Louis of Illi-
nois, October 12, 1782. 200 livres, or $40.

mark of

X

" PROVENCHERE."

Said deed was recorded June 18th, 1811. There was also
offered in evidence a deed of the said Joseph Brazeau, dated
June 18, 1811, to Auguste and Louis Brazeau, of the land in
controversy, acknowledged and recorded same day ; also a deed
dated August 13, 1818, recorded August 15th, 1818, of Au-
guste and Louis Brazeau, to Angus L. Langham, purporting to
convey the land next south of that in controversy in the present
suit. In this deed, the land conveyed is bounded north by An-
gus L. Langham. There was also evidence tending to show
that Langham went upon the land in the fall of 1818, in Octo-
ber or November, and built a house and made enclosures upon
it, and that the land had been claimed through him since then to
the present time, and that it had been in possession of some
one since Langham left it, claiming through him, except for a
year or two, say from 1828 to 1829, when it was not known
whether any one was upon the place or not. The following in-
struction asked by defendant, was given by the court : " If
the jury believe from the evidence that Charles Bizette pur-
chased the land in controversy at a public sale of the estate of
William Bizette, on or about February 18th, 1775 ; that be-
fore its purchase he was married to Mary Papin, in pursuance
of the contract therefor read in evidence ; that after this sale,
and about May 26th, 1780, said Charles died, leaving the said
Mary his widow, and a daughter, Mary ; that afterwards said
widow was married to John Bte. Provenchere, and the said
Mary to Louis Boisse ; that said Provenchere was made guar-

Dessaunier v. Murphy.

dian of the children of Charles Bizette; that they all after-
wards continued to live in this vicinity, until their deaths, as
given in evidence ; that as early as 1811, the said Provenchere
and the said Mary, as his wife, made a deed, conveying said
tract to Joseph Brazeau, under a claim by him (Brazeau) and
admitted by said Provenchere and said Mary, his wife, of hav-
ing purchased it at a public sale of the estate of Charles Bi-
zette, and that said claim and admission were inserted in said
deed ; and that said deed was recorded in the records of deeds
for the county of St. Louis, in the same year ; that said Bra-
zeau, in the same year, conveyed said tract by a deed of war-
ranty unto Auguste and Louis Brazeau, and that this deed was
also put upon said records in the same year ; that afterwards
and as early as 1818, said Auguste and Louis admitted in writ-
ing that Angus L. Langham was the owner of said tract, and
that said admission was put upon said records in the same year,
1818 ; that said Langham, in the same year, entered into the
possession thereof, and made substantial and costly improve-
ments thereon, and that this tract has ever since been possessed
and improved adversely to all others by said Langham and
those claiming by, through or under him, and that defendant
claims through him, said Langham, the possession of the por-
tion thereof that he has in possession, then the jury should
presume a good title in the defendant of the part of said tract
he is possessed of, and find for the defendant." To the giving
of this instruction plaintiffs excepted. The following instruc-
tion was asked for by the plaintiffs and refused by the court:
" Although the first instruction asked by the defendant and
given by the court states that the jury should, under a state of
case therein set out, presume a good and valid title in the de-
fendant, yet this presumption is a mixed question of law and
fact ; the court has decided in the said instruction given, what
is conceived to be the law, and it is for the jury to decide the
facts ; now if, with all the testimony and circumstances in this
case, as submitted to the jury, they shall be of opinion that the
land in dispute was not sold at public sale in 1782, after Chas.

Bizette's death, to Joseph Brazeau, and if the proof does not
satisfy the jury that Charles Bizette or his legal representatives,
conveyed this land, and that there was no possession of it until
in 1818 it was taken possession of by Langham, they are at lib-
erty to come to a different conclusion than the one they are di-
rected to make by said instruction given for defendant, and may,
under other instructions, find for the plaintiffs or defendant, as
the proof may justify." To the refusal of the court to give
this instruction plaintiffs excepted. There were others asked
by the plaintiffs and refused by the court, which it is unneces-
sary to set them forth, as all the questions discussed turn upon
the giving of the instruction above set forth. The plaintiffs
took a nonsuit, with leave to move to set the same aside ; and a
motion to that effect was made and overruled. This suit was
instituted September, 1853, and the trial was had November
27, 1854.

*Williams* and *Morehead*, for appellants. 1. Presumption
of title cannot spring up in a case like this. There was no
deed and no possession upon either of which to base a presump-
tion. For the doctrine of presuming title or rather of presum-
ing deeds, the court is referred to 1 Greenl. Ev. § 46, 47, 48 ;
1 Cow. & Hill's notes, 355, note 311. 2. When Langham first
entered into possession of this land, the plaintiffs were under
disabilities which continued, so that they could not be barred by
the statute of limitations. If so, they could not be presumed
against. (1 Cow. & Hill, 356 ; 4 J. J. Marsh. 516–27 ;
Sumner v. Child, 2 Conn. 614–20 ; 11 How. 329.) Suppose
there had been no possession of the land until now, could title
be presumed in Langham or his representatives ? If not, how
can it be presumed as against those under disability ? The dis-
ability to sue destroyed all presumption as to one under it, and
the title stands just as if there had been no possession. 3.
The instruction given is wrong under any view of the law. It
professed to refer the facts to the jury, while it decided the
case for the defendant. The refusal to tell the jury what to
do, provided they did not find the facts as set out in the in-

struction, is tantamount to shutting out the plaintiffs altogether. Let all the facts assumed in the instruction given be true except the long possession, and where would be the title ?   Would the facts assumed in the instruction have been sufficient to authorize the presumption of a perfect title in Langham, when he took possession in 1818 ?   Certainly not.   How then can such title be now presumed, when those against whom he has been holding have been under disabilities, created by our statute of limitations ?

*Todd & Krum*, for respondent.   1. The instruction given was warranted upon the principles of legal presumptions and of estoppel.   (1 Greenl. Ev. § 14 *et seq.;* 1 White Rec. 15, 16 ; 10 Mo. 312; 17 Mo. 207–360 ; 1 McLean, 69 ; 2 Hawks, 233.)   At the date of the deed of Provenchere and wife to Brazeau, (May 4th, 1811,) Mrs. Provenchere was entitled to one half of the land conveyed, by virtue of the marriage contract with her former husband, Charles Bizette, said contract having established a community between the parties thereto as to the property in controversy.   If the recital in this deed be true, then Brazeau became the owner of said land in 1782, at the public sale of Charles Bizette's estate.   That said recital is true is a matter of legal presumption under the evidence.   Although the report of the judicial sale omits to show a sale of this property, this does not disprove it.   Brazeau had nothing to do with the report, and should not be prejudiced by the omission.   Provenchere had power, as guardian and curator of the children of Charles Bizette, under the approbation of a proper officer, to sell real estate of his wards.   (1 White Recop. 16.)   Against all the plaintiffs the statute of limitations had been running for nearly twenty years before the commencement of this suit, and during all this time, as well as for more than ten years before, the defendant and those he claims under had notorious possession of the land in controversy, were improving it, and claiming it as their own, under deeds publicly recorded and under purchases, both ordinary and judicial, and without objection on the part of the plaintiffs ; they should therefore now be adjudged estopped from claiming it.

LEONARD, Judge, delivered the opinion of the court.

The substantial question here is, whether the facts recited in the instruction the court gave, constitute, in point of law, a title to so much of the land sued for as had been in the actual possession of Langham and those claiming under him, since he first took possession in 1818. The court directed the jury that, if the recited facts existed, " they should presume a good and valid title in the defendant," and we understand this to mean that, from these facts, the law raised a conclusive presumption of title, dispensing with any further corroborating circumstances, and forbidding all opposing proof—"*presumptio juris et de jure*"—and not a mere disputable presumption of law, which, although deduced by the law itself, and declared to be *prima facie* evidence of the fact, might be met and repelled by contrary proof. This conclusive presumption, it is said, is not a rule of inference from testimony, but a rule of protection adopted by the law as expedient and for the general good, attaching itself to the circumstances, when proved, and not deduced from them.

In reference to the natural presumptions to be drawn by a jury accordingly as their consciences may be satisfied of the fact, we remark that juries are frequently advised to presume conveyances, although at the same time left free to act according to their own convictions of the truth (1 Greenl. Ev. secs. 46–48); and it might, perhaps, be insisted here, that this is the extent to which the present instruction goes, amounting only to advice; but it has been otherwise argued before us, and we suppose was not so understood in the court where it was given.

The title admitted to have been originally (in 1782) in the ancestor of the plaintiffs, must be considered as still in her and her descendants, unless it has been divested in some lawful way. The court, when the cause was tried, declared that the facts stated in the instruction had that effect, and this must proceed either upon the ground of an estoppel or of a legal presumption, conclusive against the other party of some lawful

Dessaunier v. Murphy.

transfer of the title on his part, by which he is concluded, no matter how the fact may, in truth, have been.

In reference to the estoppel, we shall only remark that we do not think the omission of these parties, since 1811, to claim the lot, estops them from now exercising their original rights, even admitting that a conveyance was then made and put upon the record by the mother and former guardian transferring the lot to another, upon the alleged ground stated in the deed of a previous official sale, made in 1782 ; and that, in 1818, those claiming under this conveyance took possession of the lot and have since made costly improvements upon it, the plaintiffs and their ancestors residing all the time in the neighborhood. What effect all these circumstances ought to have with a jury in raising a presumption that the former owners have in some lawful way parted with their title, is another question ; but no court, we think, has ever yet ventured to declare that what is here relied upon would amount to an estoppel, and we are not bold enough to do so.

We remark that the advice given to juries, to presume conveyances between private individuals in England, as stated by Tindall, Chief Justice, in Doe v. Cooke, 6 Bing. 179, is confined to cases " where a title has been shown by the party who calls for the presumption, good in substance, but wanting in some collateral matter necessary to make it complete in point of form." The advice, to presume conveyances from trustees to the lawful owners, reconveyances of satisfied mortgages and conveyances from old to new trustees, are instances of the application of the rule in England. The American cases, however, have, no doubt, gone beyond this, and advised juries to presume conveyances in cases where, from long acquiescence on the part of the original owners in the adverse enjoyment of the property by others, connected with other corroborating circumstances, it is fair to presume, in point of fact, that their possession had a legal commencement. (Sumner v. Child, 2 Conn. 628 ; Clark v. Fanee, 4 Pick. 245 ; Farrar v. Merrill, 1 Greenl. (Maine) 17 ; White v. Loring, 24 Pick. 322.)

These, however, are generally mere natural presumptions—inferences of fact, that a legal conveyance has been made, to be drawn by the jury, without the production of the instrument or any direct proof of its existence, from the facts and circumstances that the law allows to be given in evidence for that purpose, and which, if satisfactory to their consciences, is a sufficient warrant in law for their finding accordingly. And in all such cases, it is obviously first a question for the court whether the circumstances offered in evidence are sufficient, in point of law, to submit the question as a matter of fact to the jury, and afterwards for the jury to determine whether they are sufficient to satisfy them of the fact to be inferred. We remark also, that the circumstances may be such that the law will deduce from them a presumption of right in the possessor, either conclusive or only *prima facie*, to prevail until overcome by contrary proof.

The present instruction, going the length of declaring that, if the facts there specified are true, the jury ought, from these facts alone, without reference to any thing else, to find a valid title in the defendants, we all think is erroneous, and that, for this reason, the judgment must be reversed.

We have already stated that these facts do not conclude the plaintiffs, by way of estoppel, from exercising their original rights, nor furnish a conclusive presumption of the transfer of their rights in some way or other to the defendants. The title here relied upon by the defendants, originated, it is said, in 1782, in an official sale of the property of the father's succession ; but it is remarked that no actual possession appears to have been taken under the purchase until at least as late as 1818 ; and it may also be assumed, for the present purpose, that this possession did not confer a title by the statute of limitations, on account of the disabilities of the original owners. Mere possession, unaccompanied by other circumstances, can not afford a conclusive presumption of title, unless continued for the length of time and under the circumstances prescribed by the statute of limitations, (when it has that effect

by mere force of the statute, as a conclusive presumption, declared by the legislature,) although, when connected with other circumstances, it may justify a jury in presuming a conveyance, or the court in deducing a legal presumption of the transfer of the right, according to the character and weight of these circumstances. In the present case the material fact, beside "the long continued possession," is the alleged sale made or completed by the guardian of the ancestor about 1782, and the payment at that time of the purchase money, evidenced by the receipt recited in the deed of 1811 ; and if this fact were established, it might then be proper to advise a jury to presume a conveyance of the title, from any proper party, pursuant to and in confirmation of the sale, even against married women ; or the court, it may be, would be warranted in deducing a legal presumption of some transaction, sufficient to pass the formal title. Here, however, the fact of sale is not one of the facts from which the presumption of title is drawn ; that matter is not submitted by the instruction to the jury. We are, however, not to be understood as saying that the fact of sale could not be inferred by a jury, from the circumstances in the case, or, indeed, that it ought not to have been presumed, if, as is insisted, the receipt was executed at the time of the transaction ; but all we now declare is, that the facts stated in the instruction do not afford a conclusive presumption of title ; so that it was the duty of the jury, if they found these facts to exist, so to pronounce.

The judgment is reversed, and the cause remanded, all the judges concurring.