WILLIAM C. GLASGOW, Appellant, v. MISSOURI CAR AND FOUNDRY COMPANY.

Division Two, June 30, 1910.

1. **TRUST ESTATE: Death of Beneficiary: Vesting of Estate: Married Woman.** Where land is conveyed to a trustee to hold the estate to the separate use of a married daughter, the trust estate when the daughter dies, does not continue, but comes to an end, and is executed in her children, whether they be male or female, and if female whether they be then married or unmarried. A married daughter is not deprived of the right to inherit her mother's estate or of the right to receive and enjoy it, simply because she is under coverture.

2. ———: ———: ———: **Trustee's Curtesy: Limitations.** Where the conveyance was to a trustee for the separate use of a married daughter, upon her death the trust ceased and was executed in her children, and if one of those children was the wife of the trustee, who still survived, the estate devolved upon him as tenant by the curtesy initiate, and the right of possession was in him, and thereafter neither she during her life, nor her children after her death, could sue for possession while he lived; and though he might have been barred by limitation from recovering possession of the property, they were not, since they did not take through him. And hence her children's suit begun within ten years after his death was not barred by limitations.

3. ———: **Dry Trust: Execution.** Where the trustee was required to execute and deliver such conveyances and leases as the beneficiary might in writing direct, and she was to receive and fully enjoy the rents, profits and issues, for which her receipt

should be a full acquittance, although "when necessary or proper" the trustee should "defend and make good the title of said premises, but for all expenses that may be incurred in the execution of the trust" he "may make deductions out of said rents and profits," the trust was a dry one, and was executed by the Statute of Uses upon the beneficiary's death, and there were no active duties devolved upon the trustee which required his retention of the estate after her death.

4. **CONVEYANCE: Presumption That Deed Was Made.** A court or jury may indulge the presumption that a deed was made, delivered and lost before registry when such a state of facts is developed as makes otherwise inexplicable the actions of the parties. Where the property was deeded in trust in 1849 for the benefit of a daughter to her husband, and though her descendants, the plaintiffs, are not barred by limitations, because of his curtesy, a presumption that he and the beneficiary executed a deed in 1852 will be indulged from the fact that he paid taxes thereon from 1849 to 1852; that from 1852 to 1879 the taxes were assessed against another and paid by such other; that from 1879 to 1898 the taxes were assessed against the lessee and grantee of such other and paid by them; that the land had been originally subject to overflow from the river, and in 1879 said lessee graded it, improved it and took actual possession, and it and the grantee have held continuous possession since; that the beneficiary died in 1865 and the trustee's wife inherited a half interest in it and he was entitled to possession because of his curtesy until his death in 1892 if it had not been sold, yet he stood by and saw all these things done and made no objection and did not inventory the property as a part of the beneficiary's estate; and that her other child, who inherited the other half, and who lived many years afterward and died without ever having been married, enumerated all her other property in her will but did not mention this.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED.

*Johnson, Rule & Allen* for appellants.

(1) On the death of Mary E. Lane in November, 1865, the trust created by the deed from William L. Ewing to William Glasgow, Jr., terminated, and the legal title vested in Mrs. Lane's heirs, Sarah L. Glas-

gow and Anne E. Lane. O'Brien v. Ash, 169 Mo. 283;
Schiffman v. Schmidt, 154 Mo. 204; Walton v. Drum-
tra, 152 Mo. 489; Baker v. Hall, 59 Mo. 265; Roberts
v. Moseley, 51 Mo. 282. (2) In 1865 Sarah L. Glas-
gow was the wife of William Glasgow, Jr., and by vir-
tue of the marital relation he became entitled to the
possession of his wife's interest. Wilson v. Geraghty,
70 Mo. 517; Mueller v. Klassmann, 84 Mo. 318; Dyer v.
Wittler, 89 Mo. 81; Arnold v. Willis, 128 Mo. 145; Ro-
bards v. Murphy, 64 Mo. App. 90; Clay v. Mayr, 144
Mo. 376; Vanata v. Johnson, 170 Mo. 269. (3) This
right of possession accrued to William Glasgow, Jr.,
on the death of Mary E. Lane, and no statute subse-
quently passed could deprive him of this right. Flesh
v. Lindsay, 115 Mo. 1; Arnold v. Willis, 128 Mo. 145;
Robards v. Murphy, 64 Mo. App. 90; Clay v. Mayr,
144 Mo. 376. (4) As there were children born of the
marriage between Wm. Glasgow, Jr., and Sarah L.
Glasgow, he was entitled to the possession of the prem-
ises from 1887, the date of her death, until 1892, the
date of his death. Rumsey v. Otis, 133 Mo. 85. (5)
On the death of Sarah L. Glasgow, in 1887, the legal
title to the half interest owned by her passed to her
children as her heirs, and that legal title remains in
them at the present time. (6) Plaintiffs are not
barred by the Statute of Limitations from maintain-
ing this suit for the half interest of their mother,
Sarah L. Glasgow. From 1849 to 1879 the land was
unimproved, unenclosed, subject to overflow by the
Mississippi river, and incapable of continuous occupa-
tion. It was not actually occupied by anyone, and was
therefore constructively in the possession of the owner
of the legal title. Turner v. Baker, 64 Mo. 245; Weir
v. Lumber Co., 186 Mo. 397. As plaintiffs were in
possession of the land in contemplation of law, in
1879, and this suit was brought in 1899, the thirty-year
statute does not apply. Weir v. Lumber Co., 186 Mo.
388. (7) Neither the twenty-four nor ten-year statute

can apply because neither plaintiffs nor their mother, Sarah L. Glasgow, were entitled to the possession of the premises until 1892, and therefore could not, until then, have maintained a suit to recover the same. Dyer v. Wittler, 89 Mo. 81; Bradley v. Railroad, 91 Mo. 493; Thomas v. Black, 113 Mo. 66; Rumsey v. Otis, 133 Mo. 85; Collins v. Pease, 146 Mo. 135; Shumate v. Snyder, 140 Mo. 77; Howell v. Jump, 140 Mo. 441; Reed v. Lowe, 163 Mo. 521; Hall v. French, 165 Mo. 430; McMurtry v. Fairley, 194 Mo. 502.

*Watts, Williams & Dines* and *J. M. Holmes* for respondent.

(1) The trustee being bound by the ten-year Statute of Limitations, his *cestuis que trustent,* under whom appellants claim, were bound also. Ewing v. Shanahan, 113 Mo. 188; Walton v. Ketchum, 147 Mo. 219; Schiffman v. Schmidt, 154 Mo. 204; Simpson v. Eisner, 155 Mo. 164. (2) The trust estate of Wm. Glasgow, Jr., was not extinguished by the death of the *cestui que trust,* nor was it dependent upon the personal status of the *cestui que trust,* as by the deed creating it active duties were imposed on the trustee and he was given control over the rents and profits. Pugh v. Hayes, 113 Mo. 424; Walton v. Ketchum, 147 Mo. 209; Norton v. Leonard, 12 Pick. 156; Duffy v. Calvert, 6 Gill. 521; Blount v. Walker, 31 S. C. 13; 2 Washburn on Real Property, p. 470; 1 Greenleaf's Cruise on Real Property, title 12, ch. 1, sec. 25; Fletcher on Trustees, 27. (3) Even were the trust estate of Glasgow dependent solely on the coverture of the *cestui que trust,* while the statute would execute the use, upon her death, as to the share of her unmarried daughter, it would not as to the share of her married daughter (under whom appellants claim) for the same reason that it would not in her own case—coverture. Walton v. Ketchum, 147 Mo. 218. (4) Appellants are bound by the thirty-year Statute of Limitations. Collins v.

Pease, 146 Mo. 135; Campbell v. Greer, 209 Mo. 216. (5) Appellants are bound by the presumption of the existence of an unrecorded deed from Glasgow, trustee, and Mrs. Lane, to their grantee, Catherine Merry. Greenleaf on Ev., secs. 16 and 17; Dessaunier v. Murphy, 22 Mo. 95; Moran v. Detchemendy, 41 Mo. 438; Brinley v. Forsythe, 69 Mo. 185; Williams v. Mitchell, 112 Mo. 300; Brown v. Oldham, 123 Mo. 631.

GANTT, P. J.—This is an appeal from a judgment of the circuit court of the city of St. Louis in favor of the defendant in a suit in ejectment, seeking to recover possession of a piece of real estate in the city of St. Louis. The petition is in the usual form, and the answer consists of a general denial and a plea of the ten, twenty-four and thirty-year Statutes of Limitations.

A jury was waived and the case tried upon an agreed statement of facts. The agreed facts are as follows:

The fee-simple title to the land in contoversy became vested in William L. Ewing, and on October 29, 1849, he and his wife conveyed the same to William Glasgow, Jr., "in trust, nevertheless, and to the express use and interest that the said premises shall be forever held for the sole and separate and exclusive benefit, use and behoof of the said Mary Ewing Lane, party of the third part, without any account to any person whomsoever or any liability in any manner for the debts or liabilities of William Carr Lane, husband of the said Mary Ewing Lane; and in further trust that said party of the third part shall forever have and fully enjoy the pernancy of the profits, rents and issues of said premises, for which her receipt and acquittances shall forever be a sufficient discharge; and that said party of the second part shall always sell and mortgage or lease the said premises or any part thereof, or any interest or estate therein, and execute

and deliver such assurances and conveyances of the same as may at any time be required by the written order or request of said party of the third part or her assigns, and also that said party of the second part shall always, when necessary or proper, defend and make good the title of said premises, but for all expenses that may be incurred in the execution of the trusts of this deed said party of the second part may make deductions out of said rents and profits of said premises.''

No conveyance of this property from William Glasgow, Jr., or Mary E. Lane, or from any of their descendants, appears of record in the records of the city of St. Louis.

Mary E. Lane died intestate November 5, 1865, leaving as her sole heirs two daughters, Sarah L. Glasgow, wife of William Glasgow, Jr., and Anne E. Lane, originally one of the plaintiffs in this suit, both being at said date of legal age. Anne E. Lane died unmarried and without issue since the institution of the suit. She left a will, but made no mention of the property here involved, and the will contained no residue clause. Her sole heirs at law are the children of her sister, Sarah L. Glasgow. Mrs. Sarah L. Glasgow died February 28, 1887, leaving surviving her her husband, William L. Glasgow, Jr., and her children, Wm. C. Glasgow, Allen Glasgow, Frank A. Glasgow, Susan R. Carson, Mary Branch, Sarah L. G. Wilson and Annie Glasgow, plaintiffs herein. Her estate was administered in the St. Louis Probate Court and the property here involved was not inventoried. William Glasgow, Jr., husband of Sarah L. Glasgow, died January 31, 1892.

The land in controversy was unimproved, unenclosed and unoccupied at all times prior to 1879; was subject to overflow from the Mississippi river and was not susceptible of continuous occupation and was

not in the actual, that is, the physical possession of any one.

No taxes on the land had been paid by plaintiffs or anyone under whom they claim since 1852. Defendant and those under whom it claims have paid taxes on this land continuously from 1852 to the present time, inclusive, said land having been assessed in their names since said date; in the name of Catherine M. Merry until her death, in the name of her heirs until 1898, and in the name of defendant since said date.

Defendant entered into actual occupation of the premises in controversy in June, 1879, under lease executed by the heirs of Catherine M. Merry, raised the grade thereof and constructed buildings thereon. On December 11, 1897, defendant obtained a general warranty deed to the property from the heirs of Catherine M. Merry. Since June, 1879, defendant has been in actual, open, notorious and visible possession of the premises.

The court found for defendant, and after an unsuccessful motion for a new trial, plaintiffs have appealed to this court.

I.  The contention in this cause hinges upon the proposition, first, whether plaintiffs, as the heirs of Mrs. William Glasgow, Jr., are barred by the ten, twenty or thirty-year Statute of Limitations. It is admitted that Miss Anne E. Lane and her heirs are barred by the actual adverse possession of defendant from 1879 until the commencement of this action in 1899, during all of which time Miss Lane was a feme sole, and could have brought her action by ejectment. As to her sister's, Mrs. Glasgow's, half, the conditions are different. From 1849 to 1879, the land in suit was vacant and unoccupied by any person and the constructive possession must be held to have been with the owner of the title.

It is insisted by defendant that the trustee William Glasgow, Jr., was barred by the ten-year limitation.

Plaintiffs assert that upon the death of Mrs. Lane in 1865, the statute executed the use in her two daughters, Mrs. Glasgow and Miss Lane; that is to say, the legal estate which had been conveyed by Mr. Ewing to Mr. Glasgow, Jr., was a trust for Mrs. Lane during her marriage to William Carr Lane, and ceased upon the death of Mrs. Lane, and thereupon both the legal and equitable title vested in the two daughters, and the trustee no longer represented the title and his failure to sue could not affect their rights, and the statute of ten years did not run on the principle that when the trustee has the legal title and the sole right to sue and his right to sue is barred by adverse possession, his *cestui que trust* is likewise barred; and that as Mrs. Glasgow was a married woman when her mother, Mrs. Lane, died, and continued to be such until her death in 1887 and when defendant took possession in 1879, she was under the disability of coverture and the right of possession was in her husband, as tenant by the curtesy, until her death in 1887, and until his own death in 1892, when for the first time the right of possession vested in her children, the plaintiffs in this case, and for the first time a cause of action accrued to them and they could not be barred until they had a cause of action. Unquestionably plaintiffs are right in their contention unless defendant is right in one or both of its propositions, to-wit, first that by reason of Mrs. Glasgow's coverture, the statute did not execute the use, but the trust remained and the legal title and right to possession and to sue remained in the trustee, and the period of limitation having run against him it had likewise barred his *cestuis que trustent,* and, second, that the trust was not a dry trust, but an active equitable one which the statute did not execute. Of these in their order.

Counsel for defendant concedes that if a conveyance be made to A in trust for B, wife of C, upon the death of C, the husband, the use will be executed in

B and she will have the legal as well as the equitable title, and such unquestionably is the law of this State. [Roberts v. Moseley, 51 Mo. 282; Liptrot v. Holmes, 1 Ga. 381; Baker v. Nall, 59 Mo. 265; Schiffman v. Schmidt, 154 Mo. 204; O'Brien v. Ash, 169 Mo. 283.]

And counsel for defendant go further, and concede that in the case supposed, if B, the wife of C, died leaving male children, the use will be executed by the statute in such children, but their proposition is that if the wife, in the supposed case, leave a married daughter, the use will not be executed, but the trust will remain an equitable one upon which the statute does not take effect, and in support of their position counsel cite Walton v. Ketchum, 147 Mo. l. c. 218. Counsel have misconstrued that case. There the trust was created not only for Mrs. Ann Yore during her life to receive the rents, profits and issues and to sell and convey as she, with the assent of her husband in writing, might direct, but provided that in case of the death of Patrick Yore and Ann, his wife, before the premises should be disposed of, then the same were to be held by said James Meegan, as trustee, for the sole use and benefit of the children of the said Patrick Yore, and Ann, his wife. In that case, by the very terms of the trust it was created for the children, and when Mrs. Yore died, the trustee was still vested with the legal estate in trust for the children, and as Mrs. Walton was then a married woman, the trust continued for her benefit and the statute did not execute it, but it has never been held to our knowledge, and certainly counsel have not cited us to any decision of any court of last resort which holds, that a trust created for a married woman alone, when the coverture ceased, still continued and was not executed in her heirs, if one or more of such heirs happened to be married women; but even if we should find such an opinion, we should not follow it, because we think it would be contrary to our Statute of

Uses and Trusts. As was said in Roberts v. Moseley, 51 Mo. l. c. 282, and re-affirmed in Pitts v. Sheriff, 108 Mo. 116: "Where a trustee is appointed to hold the estate of a married woman, to protect it from the husband, and the marriage relation comes to an end, his estate at once becomes executed in the person who is to take it, the wife, if living, or, of she is dead, her heirs at law." A married daughter, the heir of her mother, is not deprived of her right to inherit her mother's estate and the right to receive and enjoy it simply because she is under coverture. Accordingly we can not subscribe to the contention of counsel that the trust continued in Mr. Glasgow, because Mrs. Glasgow was a married woman, and that the right of action and right to possession were in him as trustee; that he could have sued for possession as trustee, and as he did not his wife and her children were barred because as trustee he was barred.

On the contrary, we hold that the trust ceased or was executed in the two daughters of Mrs. Lane, but the moment the title devolved upon Mrs. Glasgow to her half of the land, it also devolved upon her husband as tenant by the curtesy initiate. She could not sue for it, but the right of possession was in her husband, and she had no cause of action during her life, since her husband survived her, and neither did her children during their father's life, which continued until 1892. They did not take through him, so the fact that he was barred could not affect them. [Hall v. French, 165 Mo. 430; Howell v. Jump, 140 Mo. 441; Shumate v. Snyder, 140 Mo. 77.]

As to the second contention, that the trust was an active and equitable one to which the Statute of Uses did not apply, of course, if counsel are right in their construction of the deed, then what we have said in regard to their first proposition will not affect their right to plead the Statutes of Limitations. The trust created by the deed was for the sole and separate use

of Mrs. Mary Ewing Lane, without any account to any person whomsoever and free from the debts of her husband, William Carr Lane, and that she should have and fully enjoy the permanency of the profits, rents and issues of said property for which her receipt should be a full acquittance, and the trustee should execute and deliver such assurances and conveyances as she might direct and also "when necessary or proper defend and make good the title of said premises, but for all expenses incurred in the trusts he might make deductions out of the rents and profits."

There was no occasion to invoke this last clause upon which counsel base the claim that this was not a trust which the statute would execute upon the dissolution of the marriage of Mrs. Lane by her death. We think this was simply a trust to protect her estate from her husband and his creditors, and that upon her death nothing remained upon which the trustee could act and that upon her death the statute executed the trust. We have already distinguished this trust from that considered in Walton v. Ketchum, 147 Mo. 209. We think that by the rule announced in Pugh v. Hayes, 113 Mo. l. c. 432, this was a trust which the statute would execute. In that case this court said: "Where the estate is limited to a trustee to pay the rents and profits to another person for life, the trustee takes the legal estate, for he must receive them before he can make the payments; but where the estate is limited to a trustee to permit and suffer another to have the rents, the statute rests the legal estate in such other person, because the trustee has no duties to perform." We think there were no active duties devolved upon the trustee which required his retention of the estate after Mrs. Lane's death and that the statute executed the trust, and for this reason also the statute did not run against the heirs even though it ran against the trustee.

II. But while the Statutes of Limitations do not in our opinion constitute a bar to this action, there is another view of the rights of defendant to this tract of land, which the circuit court may have adopted from the agreed statement of facts, and that is that it would indulge the presumption that at some date between 1849 and 1852, Mrs. Lane and her trustee, William Glasgow, Jr., conveyed this property to Mrs. Catherine Merry, the grandmother of the grantors of the defendant, by a deed which was not recorded at the time and which could not after the lapse of fifty years be produced on the trial. Such a presumption is not one of law, but is one which a court or jury may indulge when a state of facts is developed which cannot be explained save and except that a deed was made. That Mrs. Lane and her trustee sold this land to Mrs. Merry in 1851 or 1852, is the only conclusion which is consistent with the conduct of the parties, when viewed in the light of the common experience and observation of human conduct. If such a deed was not made about that time, why did Mr. Glasgow cease to pay the taxes thereon after 1852? Why did he stand by and see Mrs. Merry pay the taxes for twenty-seven years, while the land was not susceptible of actual occupation? Why did he stand by and see the lessees of Mrs. Merry's children from 1879 down to his death in 1892, pay the taxes upon this property, improve it, grade it to a grade above overflow, erect extensive buildings upon it and finally purchase it, without asserting any claim to it? Why did he permit the assessor for forty years to assess the property to Mrs. Merry and her heirs, without remonstrance? Why, if it had not been conveyed with his knowledge, was it not inventoried as a part of his wife's estate when she died in 1887? Why did Miss Lane when she made her will of all her estate by specific devises, make no mention of this property? And why should Mrs. Merry in 1852 have this land assessed to her and begin to pay the taxes on it, coinci-

dently with the cessation of payment of taxes by Mr. Glasgow, and continue to pay the taxes thereon for twenty-seven years when the property was not susceptible of occupation and the payment of such taxes without occupation could result in no benefit to her? Why did her heirs and their lessees and vendees from and after 1879, for twenty years and down to the beginning of this suit continue to pay the taxes, grade the property above overflow and erect buildings on it? By reference again to the agreed statement these are not matters of conjecture but conceded facts. "No taxes on the land have been paid by plaintiffs or any one under whom they claim since 1852. Defendant and those under whom it claims have paid the taxes on this land continuously from 1852 to the present time, and said land has been assessed in their names since 1852; in the name of Catherine Merry, until her death, in the name of her heirs, until 1898, and in the name of the defendant herein since 1898." All these things were done while Mr. Glasgow was living in St. Louis and in active business. To the foregoing queries, plaintiffs make three answers. First, they say that whenever a court or jury has been permitted to indulge the presumption of the execution of an unrecorded deed, the party invoking the presumption entered into actual until 1879. Plaintiffs explain the want of actual occution, and here the title is asserted to have been made in 1851 or 1852 and actual possession was not taken until 1879. Plaintiffs explain the want of actual occupation when they state that the land was, at all times prior to 1879, subject to overflow and not susceptible of continuous occupation, but she did all that a prudent owner would have done, she began to pay the taxes thereon and continued to do so for twenty-seven years until the growth of the city justified her in having the land graded above overflow, and then began an open, continuous, actual possession by raising the grade and building on it, an occupation utterly inconsistent with

other than a confident claim and assertion of title under a deed.

The second reply is that Mr. Glasgow might have stood by and permitted Mrs. Merry to pay his taxes all these years, knowing that the payment of taxes did not tend to prove adverse possession. The high character of an honorable citizen, one whose name is connected with the history of the city of St. Louis, forbids our acceptance of such a reason, and certainly it utterly fails to explain his silence during the thirteen years of adverse actual and continuous possession from 1879 to 1892, which, at least, swept his own life estate from under his feet.

The third reason is that he forgot he owned the land. It is conceded and admitted that he paid the taxes from 1849 to 1852; to say he forgot in 1852 and all the years thereafter that he owned the land to which his wife held a recorded deed, and for the taxes on which he held the receipts, is to reject the ordinary and common course of human conduct and experience. We think none of these reasons is satisfactory.

We think it is absolutely unreasonable that a man of Glasgow's business capacity, after accepting the trust created by Mr. Ewing for the mother of Mr. Glasgow's wife and paying the taxes thereon for 1849 to 1852 inclusive, should suddenly in 1852 forget to pay the taxes thereon and continue to forget for forty years thereafter to pay the taxes thereon. We can not conceive that he forgot that his wife and her sister, Miss Lane, had inherited this land from their mother, if such was indeed the fact, and Mrs. Lane had not conveyed it with his concurrence to Mrs. Merry, who began in 1852 to pay the taxes on it. We can not conceive of such a negligent disregard of the interest of his wife and her sister as must have occurred by his standing idly by and permitting a stranger to actually improve and occupy this land from 1879 to the date of his

death in 1892 without protest or action to prevent it. Men are not ordinarily so indifferent to the property rights of themselves and their families. The fact that when his wife died and it became necessary to make an inventory of her lands, he omitted this land from the inventory of her estate is a most significant and obdurate fact. When he came to describe the lands, this piece was one of the three conveyed to himself in trust and if he had not known that he and Mrs. Lane had conveyed it to Mrs. Merry, he would inevitably have listed it as part of his wife's estate. He could not have failed to recall the fact that his wife's mother owned this land by gift from Mr. Ewing and that he was her trustee of the title. No less inexplicable is Miss Lane's conduct as to this tract. She had inherited a half interest in her mother's estate and yet she too suffered a stranger to improve, regrade and build extensive improvements upon it in 1879 and to continue an open occupation of it during the remainder of her life, and when she came to make a disposition of her property by will she carefully disposed of everything she possessed by specific devises without a residuary clause and made no mention of this land. We think the conduct of Mrs. Lane, Mr. Glasgow and Miss Lane in regard to this tract is explainable only upon the theory and presumption that they all knew that in 1851 or 1852 Mrs. Lane and Mr. Glasgow had made a deed to it to Mrs. Merry, and therefore everything that Mrs. Merry and her children and their lessees and grantees did with reference to this was with their knowledge and was consistent with the fact that Mrs. Merry had a deed thereto, and for that reason neither Mrs. Lane, nor Mr. Glasgow nor Miss Lane asserted any claim to this property, knowing full well they had no right thereto. On the other hand it was not an unusual thing fifty years ago for the grantees in deeds to fail to have them recorded. Such failure was liable to occur from ignorance of the effect of a record or

from carelessness or various other reasons, and thus deeds in due form and properly delivered have been laid away by the grantees in places known only to themselves and often destroyed by those who came after, without knowing their importance, and when the title has been brought in question could not be produced. That courts and juries may find and indulge the presumption of the due execution and delivery of deeds from a state of facts, such as we have here, is no longer doubted in this State. [Greenleaf on Ev., secs. 16 and 17; Dessaunier v. Murphy, 22 Mo. 95; Moreau v. Detchemendy, 41 Mo. l. c. 438; Brinley v. Forsythe, 69 Mo. 185; Williams v. Mitchell, 112 Mo. 300; Brown v. Oldham, 123 Mo. l. c. 631.]

In our opinion the circuit court upon the agreed statement of facts correctly found the issues for the defendant and its judgment is affirmed. *Burgess* and *Fox, JJ.*, concur.