LILLIE A. JONES, Appellant, v. JAMES A. KIRK et al.

Division Two, March 16, 1917.

1. **LOST DEED:** Quantum of Proof: Remote Transaction. There is no hard-and-fast rule concerning the quantum of parol proof necessary to establish a lost deed. Accuracy and detail are expected in establishing a recent transaction, and absence of them would be ground of suspicion; but remoteness necessarily affects the character of the proof, and definiteness and accuracy of detail in such case would arouse suspicion. The rule that the proof must be "clear, cogent and convincing" does not mean that the proof of the same amount of definite detail should be required in every case, without regard to remoteness or lapse of time, but depends upon the circumstances of the case, the nature of the claim, possession, assertion of ownership, etc.

2. ————: Long Possession: Presumption. Where there are uncontradicted facts and circumstances from which it is inferable that in 1860 the owner of a one-ninth interest in land and her husband conveyed it to another cotenant, the purchase price was paid, and the deed executed and acknowledged, and was destroyed by fire in the burning of the grantee's house during the Civil War; that said grantee conveyed two-ninths interest in 1867 to a grantee who had acquired the other seven-ninths, and since said date said last grantee and those who claim under him have been in possession, claiming to be the owners, and have paid the taxes, and no assertion of title was made until long after both the original grantor and grantee were dead, it will be presumed that a deed was made in 1860 sufficient in form to convey said one-ninth interest.

3. ————: ————: ————: Legal Formalities. The presumption from all the circumstances that a deed sufficient to convey the land was executed and delivered implies that the deed was executed according to then existing formalities.

Appeal from Jasper Circuit Court.—*Hon. David E. Blair*, Judge.

AFFIRMED.

*Thomas Hackney* and *A. L. Thomas* for appellant.

(1) When parol proof of the existence and contents of a lost deed is offered as the only evidence there-

of, the witness must have seen and read it and be able to speak pointedly and clearly as to its tenor and contents and to state whether it conveyed a fee simple, a life estate or a term for years, and whether it in fact was executed by the supposed grantor. Dagley v. Black, 64 N. E. 277; Rankin v. Crow, 19 Ill. 626. (2) In order to pass title to real estate by parol proof of the contents of a lost instrument, the testimony must be clear, cogent and convincing. Peters v. Worth, 164 Mo. 431; Ebersole v. Rankin, 102 Mo. 488; Shouler v. Bonander, 80 Mich. 531; Napton v. Leaton, 71 Mo. 364; Rivard v. Railroad, 257 Mo. 164. (3) There is no evidence showing that a privy examination was had of Juliette K. Davis, neither is there a particle of testimony showing or tending to show that the certificate was endorsed on the written instrument. There is no evidence showing that Juliette K. Davis's name was anywhere in the body of the instrument as one of the gra_tors. The person in whom the title to land is vested must use appropriate words to convey the estate. Signing, sealing and acknowledging a deed by the wife, in which her husband purports to be the only grantor, will not convey her interest. Bradley v. Mo. Pac. Ry. Co., 91 Mo. 493. Although a deed may be signed and acknowledged by a grantor, yet if his name does not appear in the body of the deed it does not convey the title. Golden v. Tyer, 180 Mo. 196. The requisites or essentials of a deed are: Competent proper parties; proper subject matter; a good and sufficient consideration; a written or printed form; sufficient legal words; reading if desired before the execution; and execution, signing, sealing and attestation. 13 Cyc. 526. At common law a seal is essential to the validity and operative effect of a deed of conveyance. 13 Cyc. 555; Harris v. Sconce, 66 Mo. App. 345. At common law the seal alone was the test of the existence of a deed. Jerome v. Ortman, 66 Mich. 668; Walker v. Kiele, 8 Mo. 301; Andrews v. Costigan, 30 Mo. App. 29; Potter v. Everett, 40 Mo. App. 152.

*Spencer & Grayston* for respondent.

(1) A party claiming title through a grantee in a lost and unrecorded deed will not be required, after the parties of the transaction are dead, or cannot be found, and after the lapse of several years without the grantor, or any one for or through him, claiming any interest in the property, to furnish the high degree of proof of the due execution and delivery of the lost deed that is generally required. (2) The declarations of the grantors that they had deeded the land are clearly admissible. Wynn v. Cory, 48 Mo. 346; Dickerson v. v. Chrisman, 28 Mo. 134; McLaughlin v. McLaughlin, 16 Mo. 250; Johnson v. Quarles, 46 Mo. 423; Wells v. Burt, 3 Tex. Civ. App. 432; Townsend v. Downer, 32 Vt. 183. (3) After a lapse of many years, and where there is no copy of the deed in existence, the secondary testimony cannot be as specific as in some cases, and the witnesses need only testify to the substance of the deed. Parks v. Caudle, 58 Tex. 216; Perry v. Burton, 111 Ill. 138.

WILLIAMS, J.—This is an appeal from the circuit court of Jasper County. The petition is in two counts, one in ejectment and one seeking partition. The land involved in the ejectment count is an undivided one-ninth interest in the southeast quarter of the northeast quarter of section 33, township 28, range 32, Jasper County, Missouri. The answer is a general denial, a plea of the Statute of Limitations, and a separate count seeking, by way of affirmative relief, to establish a lost deed alleged to have been executed in 1860 by Juliette K. Davis and husband (plaintiff claims under said Juliette K. Davis as heir) to Benjamin C. Webb, conveying an undivided one-ninth interest of the land in dispute. Trial was had before the court, without a jury, resulting in a judgment in favor of the defendant establishing said lost deed. Plaintiff has duly appealed.

Upon the trial the following admissions were made to-wit: Elijah C. Webb was the common source of title and died intestate in Jasper County in 1859. He left

surviving him nine heirs at law, including Juliette K. Davis and Benjamin C. Webb. It was also admitted at the trial that defendant Kirk, by proper conveyances, had acquired the title of all of the Elijah C. Webb heirs except that of said Juliette K. Davis.

On March 8, 1867, Benjamin C. Webb and wife (the alleged grantees in said lost deed and one of the nine heirs as aforesaid), executed a quit-claim deed to one John S. McBride, whereby they undertook to convey an undivided *two-ninths* interest of this land. About the same date, by other conveyances, said John S. McBride acquired the record title to the remaining *seven-ninths* interest in said land from the other seven heirs at law of the said Elijah C. Webb, deceased, and from that time on said John S. McBride and his successors in title have executed conveyances purporting to pass the entire title and interest in this land. It was further admitted that defendant Kirk and those under whom he claims have been in the actual, peaceable, open and notorious possession of the land in question since 1867, claiming to own the entire interest therein and to have paid all taxes on said land since that date.

Plaintiff introduced evidence tending to show that she is the daughter of Juliette K. Davis and that her mother died in August, 1864, and left surviving her her husband, William P. Davis, the plaintiff and two other children. The two other children died in the years 1877 and 1879 respectively. Plaintiff was married in 1874 to Thomas H. Jones who died on December 21, 1908. Plaintiff's father, William P Davis, remarried twice after the death of plaintiff's mother. There were no children born of the second marriage. There was one child born of the third marriage, William Clyde Davis, born in 1886, who is still living. Plaintiff's father died on June 3, 1906. This suit was instituted October 28, 1909.

The evidence upon the part of the defendants was substantially as follows:

Eliza J. Chinn, by deposition, testified that she was eighty-one years old and that in 1850 she married Ben

C. Webb (the alleged grantee in the lost deed), and that her said (first) husband died in the year 1888. The witness was acquainted with Juliette Catherine Davis, daughter of Elijah C. Webb, and remembered a "transaction of Mrs. Davis and her husband disposing of their interest in the Elijah C. Webb estate." "It was in '60, the spring of '60." That "Mr. Davis and his wife and a justice of the peace came to our house to sign it." The justice "lived in this county, somewhere, I suppose. I don't remember just where he lived; Wm. Davis and his wife had him come down there." That Mr. Webb wrote the deed first and Wm. Davis and his wife signed the instrument; that Ben C. Webb was buying the land. "I can't give you the numbers or describe the land to you at all, but it was the land, I don't know who owns it now, McBride's old place it used to be" . . . "No, sir, I don't know, I could not tell you the number of acres in it;" that Mr. and Mrs. Davis signed the deed that her husband had written; "the deed was burned in time of the war, and they say it was never recorded. I suppose it was. They say it don't show, but our deeds were all burned in time of the war;" "Mr. Webb had the deed there the day after Mr. and Mrs. Davis signed the deed, and the justice signed the acknowledgment." That it was kept in the house until the war broke out, when it was hidden in the field under a pile of rocks "in a tin box and a wooden box over that." . . . "Some boys found them and brought them to us. I was away from home when the house burnt. They had been brought to the house, but had never been put away any more. I was sick and they moved me to my mother's; I wasn't there when the house was burned, but everything was burned the time they were through burning houses there, the time old man Hatcher and Jessie Ferry was killed." The house was burned in 1863. The witness further testified that her husband paid for this land with stock, "two yoke of work cattle, some milk cows, some young heifers and a couple of young mares;" that James Johnson, the boy who worked for Mr. Davis at that time, came and took

the stock to Mr. Davis's home the next morning; that the land that day purchased by witness's husband was included in the land that she and her husband afterwards sold to John S. McBride; that shortly after this transaction Mr. and Mrs. Davis bought land "over west of here, somewhere west of town." After this time the witness's husband claimed to own the land, and Juliette K. Davis "never claimed it after she sold it, of course."

J. M. Johnson, by deposition, testified that he was sixty-seven years old and was born and raised in Jasper County; that he was acquainted with William P. Davis and his wife; that he lived about three and one-half miles from the Webb homestead and was acquainted with Elijah C. Webb and Benjamin C. Webb; that he worked for William P. Davis in 1859 and '60; that he remembered "a transaction concerning the sale of the interest in the Elijah C. Webb estate between Webb and Davis" and "was working there when the trade was made;" that the witness and Mr. and Mrs. Davis went to Ben Webb's place one evening and stayed over night and in the morning they wrote the instrument (the witness used the word deed, but the court struck out the character of the instrument); that Mr. Webb wrote the instrument "on his own table" and "after he got it written he read it over and called me as a witness; then he handed it to Mr. Davis and he read it over." "Mr. Davis was making the deed to Mr. Webb." That "after the instrument was read over, we went out into the lot and took out the cattle and drove them home;" "Mr. and Mrs. Davis drove them down to Mr. Davis's home." On cross-examination this witness testified that there was no one else in the house to witness the deed except the witness, Benjamin C. Webb and William P. Davis, and that William P. Davis did not sign the deed that morning; the witness further stated that he was not there the next day "when him and his wife signed it up." The witness was not there when the deed was signed, but stated that he took care of the stock until

they came back, and they said that they had signed it; the witness did not read the paper the morning that he was there, stating, ''I aint got much education, and they read it over to me.'' ''Yes, they called on me to witness the deed. They took the cattle over that morning, two yoke of cattle, two cows and two yearling heifers to William P. Davis's house.'' This witness further testified that after Mr. Davis read the instrument, ''he folded it up and left it with Mr. Webb.'' The further question was asked and answer made, as follows: ''Q. You said something about driving this cattle to Mr. Davis's and then Mrs. Davis and her husband came over there and you had some conversation with them about the deed and about signing it.'' A. ''I asked them if they got their business fixed up. They said they did.'' ''They stayed all night down there to Mr. Webb's their two selves.'' ''This was the next evening. We went like it was today, stayed all night, brought the cattle tomorrow and then the next day they went down and fixed up the papers.'' Both of them said, ''we got our business all fixed up;'' that ''when Mrs. Davis, Mrs. Juliette K. Davis, went back the second evening over to Webb's with her husband, she said she was going over to fix up the papers about this land.''

Further evidence introduced by defendants in support of their theory of a lost deed was, upon motion of plaintiff, stricken out, but no exceptions were saved to the court's action in striking out.

After a very careful consideration of all the testimony stated in the foregoing statement of facts we have reached the conclusion that the evidence is sufficient to sustain the decree entered by the trial court.

A review of the many authorities on the subject will disclose the absence of a hard-and-fast rule concerning the exact *quantum* of parol proof necessary to establish a lost deed. The remoteness of the alleged transaction must necessarily affect the character of the proof required. While accuracy and detail are to be expected in establishing a recent transaction and

Lost
Deed.

the absence of the same would give ground for suspicion, yet as to remote transactions (as in the instant case where the transaction occurred fifty-three years before the trial), the presence of the same definiteness and accuracy which would strengthen the case of a recent transaction would, in most instances, but tend to arouse suspicion concerning the occurrence of the remote transaction.

The rule, therefore, that the proof must be "clear, cogent and convincing," as announced in the cases cited by appellant, does not mean that proof of the same amount of definite detail should be required in every case, without regard to remoteness or lapse of time, but as stated in 4 Ency. Evidence, at page 215:

"The sufficiency of the proof necessary to establish an alleged lost deed depends largely upon the circumstances of the case and the nature of the claim which it is relied upon to support. While mere difficulty will not relax the stringency of the rule requiring definite and certain proof, yet the evidence in many cases must be of a circumstantial nature and while perhaps equally convincing, it must derive support from the lapse of time and accompanying facts and circumstances."

At page 219 (4 Ency. Evidence), it is further said: "Except in cases falling within the Statute of Limitations, a deed will not be presumed as a matter of law. But where all the circumstances *are inconsistent with any other hypothesis, the existence of a sufficient deed is often presumed as a matter of fact in support of a long-continued and undisputed possession under a claim of ownership,* even though there is no direct evidence that one was ever executed." (Italics ours).

In the early case of Dessaunier v. Murphy, 22 Mo. 95, 1. c. 103, the court, speaking through LEONARD, J., after discussing the English rule, said:

"The American cases however, have, no doubt, gone beyond this and advised juries to presume conveyances in cases, where, from long acquiescence on the part of the original owners in the adverse enjoyment of the property by others, connected with other corroborat-

ing circumstances, it is fair to presume, in point of fact, that their possession had a legal commencement.''

In the same case, l. c. 104-5, it was further stated:

''Mere possession unaccompanied by other circumstances, cannot afford a conclusive presumption of title unless continued for the length of time and under the circumstances prescribed by the Statute of Limitations (when it has that effect by mere force of the statute, as a conclusive presumption, declared by the Legislature) although when connected with other circumstances, it may justify a jury in presuming a conveyance, or the court in deducing a legal presumption of the transfer of the right, according to the character and weight of these circumstances. In the present case the material fact beside 'the long continued possession,' is the alleged sale made or completed by the guardian of the ancestor about 1782 and the payment at that time of the purchase money, evidenced by the receipt recited in the deed of 1811; and if this fact were established, it might then be proper to advise a jury to presume a conveyance of the title from any proper party, pursuant to and in confirmation of the sale, even against married women; or the court, it may be, would be warranted in deducing a legal presumption of some transaction, sufficient to pass the formal title.''

In the case at bar defendant and those under whom he claims have, since the year 1867, been in the peaceable possession of this land, claiming to own the same, and since said date have paid all taxes thereon. From the uncontradicted facts and circumstances detailed in evidence, we think, it is also clearly inferable that in 1860 Benjamin C. Webb (defendant's predecessor in title) bought this land from Juliette K. Davis (the person under whom plaintiff claims), and paid the purchase price therefor, and in connection with said transaction received a written instrument signed by the then owners of said land and acknowledged by them before a justice of the peace; that said instrument was afterwards destroyed by fire and that after said sale the vendors made no further claim to said land. Applying the rule

announced in the Dessaunier case, supra, we find no difficulty in saying that the long continued possession here shown is surrounded and accompanied by "corroborating circumstances" sufficient in character to justify the allowance of a presumption of fact that a deed was then made to said Webb sufficient in form to convey the land in controversy. The facts of this case are even stronger than the facts in the Dessaunier case. In this case there is evidence of a written instrument having been executed and delivered at the time of the transaction. In the Dessaunier case there was no such evidence.

The foregoing rule of presumption was, in the case of Glasgow v. Mo. Car & Foundry Co., 229 Mo. 585, l. c. 600, applied to a state of facts even less cogent and convincing than those now in hand, the court speaking through GANTT, P. J., saying:

"That courts and juries may find and indulge the presumption of the due execution and delivery of deeds from a state of facts such as we have here is no longer doubted in this State."

Many Missouri cases, including the Dessaunier case, supra, are cited in support of that doctrine.

It is contended by appellant, however, that there is no evidence that the lost deed was executed according to the then existing legal formalities. Concerning this point, we call attention to the language employed in the quotation from Glasgow v. Mo. Car and Foundry Co., supra, wherein it is said that the "*due* execution and delivery of deeds" is to be presumed under conditions there present. (Italics ours.) It is quite apparent that it would be futile to presume the existence of an invalid instrument. The deed which is to be presumed is one executed in conformity "with all the formalities required by law." [4 Ency. of Evidence, page 210 (h), and cases therein cited.]

The judgment is affirmed. All concur.