BETHUNE *et al.* v. THE CLEVELAND, ST. LOUIS & KANSAS CITY RAILWAY COMPANY; HAYWARD *et al.*, *Interpleaders, Plaintiffs in Error.*

### Division Two, June 8, 1897.

1. **Practice**: ESTOPPEL. When the question of estoppel is not raised in the trial court by instructions or otherwise, it can not be raised in this court.

2. ———: MATTERS CONSIDERED ON APPEAL. Where no objection is made to the pleadings in the trial court, and no instructions are asked or given, and no motion in arrest is filed, there is nothing before this court for review except the action of the court in admitting improper evidence over the objection and exceptions of plaintiff in error, and the sufficiency of the evidence to support the judgment.

3. **Evidence**: HARMLESS ERROR. It is not prejudicial error to permit a witness to testify concerning the contents of written contracts if the contracts themselves are subsequently read in evidence.

4. **Appellate Practice**: SUFFICIENCY OF EVIDENCE IN ACTIONS AT LAW. In actions at law, although tried by the court sitting as a jury, the Supreme Court will not weigh the evidence and determine whether or not the finding of the trial court was correct, where no declarations of law were asked.

*Error to St. Charles Circuit Court.*—HON. W. W. EDWARDS, Judge.

AFFIRMED.

*H. M. Pollard* for plaintiffs in error.

(1) The important question in this case is whether plaintiffs have shown such facts as would create an estoppel *in pais* as against Hollins, and as against his assignees, plaintiffs in error. In order to constitute an estoppel, there must be shown at least the following things: *First*, that the party to be charged with the estoppel did make the statements charged to have been

made; *second*, that the party to whom the statements were made was ignorant of the truth; *third*, that the party to whom they were made actually relied upon the statements made and was thereby induced to alter his position, to his injury. *Blodgett v. Perry*, 97 Mo. 263; *Spurlock v. Sproule*, 72 Mo. 509; *Andrews v. Lyons*, 11 Allen, 349; *Bales v. Perry*, 51 Mo. 449. (2) Plaintiffs claim that the Haywards are estopped by joining in the contract attached to, and made a part of, the amended answer. I am utterly unable to see how any question of estoppel can be raised against the assignees of Hollins, by reason of the fact that they join in that agreement. Now it seems clear that a person has no status to set aside a fraudulent conveyance or to enforce a trust, unless he has a judgment against the fraudulent grantor or the person in whose favor the trust results. *Merry v. Fremon*, 44 Mo. 518; *Almutt v. Leper*, 48 Mo. 319; *Crim v. Walther*, 79 Mo. 335; *Dodd v. Levy*, 10 Mo. App. 121; *Humphreys v. Atl. Milling Co.*, 98 Mo. 542. (3) Although the answer alleges that Hayward had no right or authority to make the claim for Hollins, the plaintiffs are not in position to show it, even if it were a fact, for by the recitals in their bond to the sheriff they acknowledge that Hollins made this claim, and they are now estopped to deny it. This court has repeatedly so determined. *Railroad v. Green*, 68 Mo. 169; *Hundley v. Filbert*, 73 Mo. 34; *State v. Williams*, 77 Mo. 468; *Lionberger v. Krieger*, 88 Mo. 160. (4) Hollins, in his testimony, was asked to state the contents of not only one written contract but of several. While he stated that he had the papers somewhere, and had not looked for them, the court, against objection, permitted him to give their contents, and his construction of them. (5) Court, against objection, permitted plain-

tiffs' counsel to shamefully lead his witnesses and suggest their answers, all against objection.

*H. J. Cantwell* for defendants in error.

(1)   The finding and verdict will not be disturbed by the appellate court when there is substantial evidence to support it. *Bray v. Kremp*, 113 Mo. 552; *Schnare v. Austin*, 106 Mo. 610.   (2) The admission of the testimony of Hollins as to contents of certain written instruments did not prejudice plaintiffs in error, as he afterward introduced the instruments themselves, and the judgment being manifestly for the right party should be affirmed even though incompetent evidence may have crept into the case.   No objection to the pleadings was made at the trial.   (3)   As to the first assignment claimant specifies that Hollins was permitted to testify as to the contents of certain written instruments.   As these instruments were all afterward introduced by Hayward himself, defendants in error can not conceive how plaintiffs in error were injured, particularly as Hollins' testimony as to the contents is more favorable to plaintiffs in error than the instruments are.   (4)   Defendants in error believe that this court will say upon an examination of this record that it was impossible for any trial court to have found a verdict for the claimant.   A mere statement of the evidence is convincing and convicting.

BURGESS, J.—In 1888 and 1889 the plaintiffs, Bethune *et al.*, as contractors, were engaged in the construction of the Cleveland, St. Louis & Kansas City Railroad under a contract at fixed prices for the labor and material, with William Baird & Company. Baird & Company had a contract with the railroad company by which they (Baird & Company) were to receive,

practically, all the stock and bonds of the railroad company for constructing the road.

Baird & Company failing to pay, Bethune *et al.* filed their lien under the statute, and on March 22, 1890, a judgment was rendered in their favor for $88,535.76, which was decreed to be a lien upon the roadbed, depot, bridges, station houses, rolling stock, real estate, and improvements of the Cleveland, St. Louis & Kansas City Railroad. A special execution was issued in conformity with the judgment, and the property in issue here, to wit, one caboose car, one box car, and eleven flat cars, with other property, was seized. These cars were then in use on said railroad, and were marked, "Cleveland, St. Louis & Kansas City Railroad."

J. T. K. Hayward was then chief engineer and in charge of the railroad. Assuming to act as the personal agent for Frank C. Hollins, of New York, who was then president of the railroad company, he filed an interplea in Hollins' name, setting up that the cars were the property of Hollins.

Bethune gave bond, the sheriff retained the cars, and on the tenth day of May, 1890, these cars, with the other property described in the decree, were sold to Bethune *et al.*, trustees for all the lienholders of the railroad, the present plaintiffs in error, the Haywards, being among the number of the lienholders, having obtained lien judgment against the railroad for their arrears of salaries, and receiving their distributive share of the proceeds of such sale.

In the interval between the filing of the claim in Hollins' name (by Hayward, assuming to act as his agent) and the date of the sale, Hollins came to Missouri, and, upon being informed that this claim had been made by Hayward in his name, he (Hollins) expressly disclaimed to Bethune and to Cantwell any

authority in Hayward for the action, and disclaimed
title to the cars.    After the sale and the distribution
of the proceeds as aforesaid, the claim meanwhile
remaining on file without any action having been
taken thereon, the Haywards bought from Hollins
whatever interest he might have in the claim and pro-
cured themselves to be substituted as parties to the
interplea, as his assignees.

On the trial the interpleaders read in evidence a
communication from one Frank J. Matthews, then
president of the Cleveland, St. Louis & Kansas City
Railroad, to Frank C. Hollins & Company, giving to
them "the sole control of all the stock and bonds of
the company issued under its first mortgages to dispose
of same as you see fit," provided he secured the build-
ing of this railroad; an agreement between Hollins &
Company and "Baird and associates," by which the
latter agreed for the bonds and stock of the railroad
company to build the road; an agreement between
Hollins & Company and Baird and associates by
which Baird and associates were also to get "all dona-
tions of land or money from the people along the line
of said railroad," which agreement provided for a
division of the stock and bonds between Baird and
associates, and Hollins & Company, after a sufficient
quantity of stock and bonds were sold to build the road;
also an agreement between the St. Charles Car Com-
pany, the Cleveland, St. Louis & Kansas City Railroad
Company, by Hayward, general manager, and William
Baird & Company, by which the railroad company
agreed to build certain side tracks for the convenience
of the St. Charles Car Company, and the St. Charles
Car Company was to deliver to William Baird & Com-
pany $5,000 worth of certain rolling stock, which
included the cars herein.

It was shown in evidence that the grading of

these tracks was done by Bethune *et al.*, defendants in error; that an account for $5,069 was rendered by the car company for these cars, the $5,000 as provided above credited thereon, and that the St. Charles Car Company filed its lien for the balance, $69, and received its pay by the sale under foreclosure of the liens.  There was also read in evidence another agreement of date May 14, 1889, between Hollins & Company and Baird and associates, by which Baird and associates released to Hollins & Company all the property then in Missouri, and all rights under his contract, and Hollins & Company assumed the payment of all the obligations of Baird and associates.

It was further shown in evidence that these cars were marked "Cleveland, St. Louis and Kansas City Railroad," and were in use on the road while the work of construction was going on; that they were listed in Poor's manual by the officers of the road as the property of the railroad company with the knowledge of Hollins & Company and Hayward.  That after the claim was filed by Hayward assuming to act as agent for Hollins, Hollins came to St. Louis and was informed of Hayward's action by Bethune, and that he then disclaimed ownership and denied Hayward's agency or authority to file a claim for the cars in his behalf.  It was then that all of the lienholders, in order to protect their interests, agreed to bid on the property.  The Haywards were all lienholders and signed the agreement.  Hollins himself was interested, and in pursuance of this agreement the whole property was sold and the liens for the material and labor, which had created the property, were discharged, and after the sale Hayward "purchased whatever rights Hollins & Company had."

The trial was had before the court, a jury being waived.  No declarations of law were asked or given.

The trial resulted in a judgment against the interpleaders, and in favor of the plaintiffs.   Interpleaders thereupon filed their motion for a new trial, which was overruled, and they saved their exceptions and bring the case to this court by writ of error for review.

Counsel for the interpleaders has in an elaborate brief discussed at great length and with much ability the doctrine of estoppel as applied to plaintiffs; but we are unable to see how that question can be considered by this court under the facts as presented by the record.   The question of estoppel was not raised in the court below, by instructions or otherwise; and can not be raised for the first time in this court.

As no objection was taken to the pleadings in the court below, and no instructions asked or given, and no motion in arrest filed, there is nothing before us for review except the action of the court in admitting improper evidence on the part of plaintiffs over the objection and exceptions of the interpleaders, and the sufficiency of the evidence to support the judgment of the court.   The first proposition is based on the fact that Hollins, who was a witness for plaintiffs, was permitted to testify over the objection of the interpleaders to the contents of certain written contracts, but as the contracts themselves were subsequently read in evidence this was not prejudicial error, and the judgment should not be reversed upon that ground alone.

As to the contention that the judgment of the court was unauthorized by the evidence, it is well settled in this State in actions at law, although tried by the court sitting as a jury, that the Supreme Court will not weigh the evidence and determine whether or not the finding of the trial court was correct.   The only way in such actions when there are no valid exceptions saved to evidence at the trial to have the action of the trial court reviewed, is to ask declarations of

law applicable to the facts of the case as disclosed by the evidence adduced on the trial.

In *Weilandy v. Lemuel*, 47 Mo. 322, it was said: "The court, in trying issues of fact, sits as a jury and gives a general verdict; and the only way in which its errors can be corrected, if it decides the law wrongfully, or makes a misapplication of the law to the facts, is to ask declarations of law or instructions, in order that we may see on what theory the court proceeded. To attempt to review this case would be simply giving our opinion upon the weight of the evidence, when no point of law was saved or raised in the trial court. This we can not do." *Bray v. Kremp*, 113 Mo. 552; *Harrison v. Bartlett*, 51 Mo. 170; *Miller v. Breneke*, 83 Mo. 163; *Altum v. Arnold*, 27 Mo. 264; *Conran v. Sellew*, 28 Mo. 320; *Wilson v. Railroad*, 46 Mo. 36; *Cunningham v. Snow*, 82 Mo. 587.

As there was evidence on the part of the plaintiffs upon which to bottom the finding of the court, we can not undertake to pass upon the weight of the evidence or the credibility of the witnesses. That prerogative belongs to the court sitting as a jury.

From these considerations it follows that the judgment of the circuit court must be affirmed, and it is so ordered. GANTT, P. J., and SHERWOOD, J., concur.