## GIBSON, Respondent, v. THE BAILEY COMPANY, Appellant.

**St. Louis Court of Appeals, October 17, 1905.**

1. **PLEADING: Variance.** Where an agent sued his principal for commissions on goods sold by him and the petition alleged that the plaintiff was employed to sell defendant's goods, generally, on commission, and his evidence showed that his contract was to sell a particular line of plaintiff's goods, the proof was narrower than the petition, but comprehended by it, and there was no such variance as to void the judgment rendered thereon.

2. **PRINCIPAL AND AGENT: Misconduct of Agent.** A general agent for the sale of his principal's goods, who, during his agency procured the cancellation of orders taken by him for his principal in order to place them with another company in which he was interested, is guilty of such misconduct as to defeat his action for compensation for other goods sold for his principal.

3. **PRACTICE: Presumption of Correct Finding.** Where no declarations of law were given by the trial court to indicate the theory on which the verdict was rendered, the appellate court will presume that the trial court took a correct view of the law, if there was substantial evidence to support a verdict on that theory.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Edwin Rosenthal* and *Stephen C. Rogers* for appellant.

"An agent who has misconducted himself in the business of his agency, and who has engaged in illegal transactions, by which he acquired interests adverse to those of his principal, cannot, under a *quantum meruit,* claim compensation for his services." Hobson v. Peake, 44 La. Ann. 383; I Am. and Eng. Ency. of Law, p. 397; Tiffany on Agency, p. 415, sec. 107; Mechem on Agency, p. 146, sec. 215; Huffcut on Agency (2 Ed.), p. 110, sec. 90.

*John D. Gibson* for respondent.

(1) Where the trial court has the witnesses personally before it, and there is evidence to sustain the finding, this court will not reverse such finding, unless it is clear it ought to have been otherwise, than is shown by the record. Judy v. Bank, 81 Mo. 404; Snell v. Harrison, 83 Mo. 652; McCullough v. Ins. Co., 113 Mo. 606; Fendler v. Dewald, 14 Mo. App. 60. (2) Where an action at law is tried without error, and no instructions are asked or given, the judgment of the trial court will be upheld on appeal, if it can be sustained on any possible theory of law applicable to the facts. O'Niel v. St. Louis, 8 Mo. App. 416; Gentry v. Templeton, 47 Mo. App. 55; Hema v. Hamilton, 59 Mo. App. 490.

BLAND, P. J.—The petition states the following cause of action:

"Plaintiff states that on or about the fifteenth day of August, 1903, said defendant, through its president, one R. A. Bailey, made a contract with plaintiff, by the

terms of which he was to be paid by said defendant a commission of fifteen per cent on all goods sold by him in behalf of said defendant, one-half of said commission upon acceptance of order by defendant, and one-half when said goods were delivered to the purchaser thereof.

"That in pursuance of said contract and agreement, plaintiff on or about the fifteenth day of September, 1903, began negotiations with the Wm. J. Lemp Brewing Company, a Missouri corporation, for a large number of advertising busts, known as Falstaff busts, to be used by said Lemp Brewing Company in advertising their business, and after much correspondence with defendant, and work by plaintiff relative to said busts, for the said brewing company, R. A. Bailey, president of said Bailey company, came to St. Louis and closed a contract with said Lemp Brewing Company for a large number of said busts, to-wit, two thousand five hundred, at and for the price of one dollar and ninety cents per bust, making a total sum of four thousand seven hundred and fifty dollars.

"Plaintiff states that the order for said busts was accepted by said defendant and that said goods have been shipped to said brewing company by defendant, and that there is now due and unpaid plaintiff for commission on said sale the sum of seven hundred and two dollars and fifty cents, which has been demanded of defendant and payment refused."

The answer is a general denial and the further plea of the following special defense:

"Further answering, defendant says that plaintiff verbally agreed with defendant, on or about August 15, 1903, to represent said company in this location for a commission of fifteen per cent on all 'art statuary' sold by him, and a commission or compensation was to be paid plaintiff by defendant company for the sale of sign or advertising novelties, but that the amount of such latter commission or compensation was not agreed upon between plaintiff and defendant, but was to be deter-

mined according to the circumstances of each case. And that plaintiff after August 15, 1903, and before November 20, 1903, did, on behalf of persons other than the defendant company, solicit orders for art signs from persons who had given orders to the Detroit Composite Company, which orders had been acquired by the defendant company, and further, that plaintiff did endeavor to procure and did procure, within the same period, the cancellation of orders which the defendant company held."

The reply was a general denial of the affirmative matter in the answer. The issues were submitted to the court, sitting as a jury, who, after hearing the evidence and without any declarations of law being asked or given, found the issues for plaintiff and assessed his damages at $525. Defendant duly appealed to this court.

Defendant is a manufacturer of art goods and artistic signs at the city of Detroit, Michigan. The uncontroverted evidence is that through the solicitation of plaintiff, the Lemp Brewing Company, of St. Louis, Missouri, in September, 1903, gave the defendant an order for two thousand Falstaff busts for the purpose of advertising its Falstaff brand of lager beer; that these two thousand busts were manufactured by the defendant and delivered to the Lemp Brewing Company, for which it paid defendant thirty-five hundred dollars. According to the pleadings, plaintiff is entitled to fifteen per cent of the thirty-five hundred dollars, unless he forfeited his right to the commission by violating his contract with the defendant, as alleged in the answer.

Plaintiff's evidence is that he resides in the city of St. Louis, and in August, 1903, visited Detroit, Michigan, on business with parties other than defendant; that prior to going to Detroit, he had a conversation with the Lemp company about Falstaff busts as an advertising medium for its beer, and while in Detroit he was induced by his friend, H. L. Messmore, to see defendant,

and that he, in company with Messmore, went to defendant's place of business, where he met R. A. Bailey, manager of defendant company, had a conversation with him about the Falstaff busts for the Lemp Brewing Company and, on being told by Mr. Bailey that his company could manufacture the busts and would be glad to get the order, he agreed with Mr. Bailey to make an effort to get the order for him, and that Mr. Bailey agreed to pay him fifteen per cent commission on all busts he (plaintiff) could sell to the Lemp Brewing Company; that in this conversation nothing whatever was said about selling any other goods for the defendant in St. Louis territory and that he did not agree to sell any other goods for the defendant or to act as its general agent for the sale of its goods in St. Louis; that at the time he had the conversation he was general agent, in St. Louis territory, for the Detroit Composite Company, which manufactured goods of the same class as those manufactured by defendant, but was unable to make the Falstaff busts. The evidence shows that the defendant acquired the Detroit Composite Company sometime in the fall of 1903, and notified the plaintiff of the fact in November, 1903, at which time the plaintiff had organized and was a stockholder in the National Art Sign Company. Prior to this time the plaintiff had solicited and placed with the Detroit Composite Company orders from Graf Distilling Company, Mette & Kenna and the Majestic Range Company, all of the city of St. Louis. These orders passed over to defendant when it acquired the Detroit Composite Company. After the formation of the National Art Sign Company, plaintiff induced the parties to withdraw the foregoing orders and place them with the latter company. Plaintiff did not solicit any order or orders for the defendant in St. Louis territory other than the one he procured from the Lemp Brewing Company.

R. A. Bailey, after stating that plaintiff and Messmore came to his office in Detroit, in August, 1903, said

that Messmore told him, in the presence of plaintiff,. that the Composite company had or was about to dissolve, told him what Gibson could do and recommended that Gibson handle defendant's goods in St. Louis. Witness further testified: "I told him that we had no agent, and really hadn't pushed that part of the business very much, that we would be very glad to have him represent us, that we had no representative in this territory with the exception of my brother, who simply sells our regular art lines; and he (Gibson) said that the Detroit Composite Company was not able to fill his orders that he had here and that it had some good orders it would turn over to us; and I said we would be very glad to get them and were willing to pay for them; and he saw some of our line. We were in the show room. He saw some of our regular art line, and he asked me if I would be willing to sell him some pieces. I told him I would and he selected those three pieces, I believe (indicating). He said he thought he could sell some of them. I told him it would be all right, we would pay him fifteen per cent commission on any he sold, that was our regular commission to any of our traveling men in our art line; and he said he hadn't entirely finished up his relations with the Composite company and that they owed him something, and he thought it was necessary to garnishee them to get his money.

"Plaintiff's counsel: Q. What is that? A. The Detroit Composite Company; he said that they owed him some money yet, and he wanted to keep the thing quiet and not say anything about representing us until he could get squared up with them and got his money. I told him we would be very glad to pay him for any-. thing he could get for us, and he went away, we supposing he was our representative in this territory—had supposed so, and it went along. I think it was the second time—I think he came up there again and told me he had seen Mr. Lemp and approached him on this Falstaff bust."

Witness also testified that he learned a new company had been formed and, suspecting some wrong, came to St. Louis, in November, 1903, and went direct to the parties whose orders had been taken from his company and which he had acquired from the Composite company, learned the facts and afterwards met the plaintiff at the Planters' hotel and told him what he had learned and then and there discharged him and told him he would not pay him any commission on the Lemp order for Falstaff busts, and the next day called on the Lemp company and closed the deal for the busts.

H. L. Messmore's deposition was taken and, in reference to the conversation had with Bailey, August, 1903, he testified as follows:

"Q. Did Mr. Bailey tell the plaintiff that he could represent him as his agent and sell the goods for him upon commission? A. I don't remember the exact words that were said in that regard, but I took it that way. I couldn't say that there was a positive engagement made at that time, but there was such an understanding as I have taken myself from people. So far as I know, Mr. Gibson was representing the Detroit Composite Company when I introduced him to Mr. Bailey. He never told me different."

.1. The petition alleges an agreement for employment to sell defendant's goods, generally on commission. The plaintiff's evidence is that the contract was to sell a particular bust to be manufactured by defendant and to correspond with a sample to be furnished. Plaintiff's proof is narrower than his petition, but what he did prove is comprehended by the allegations of the petition, therefore, there is no such variance between the proof and the petition as to void the judgment.

2. According to plaintiff's evidence he was entitled to recover; according to defendant's evidence, plaintiff was not entitled to recover anything, for if he was a general agent for the sale of defendant's goods in St. Louis territory, as testified to by Bailey, according to his

own evidence, he was guilty of such misconduct by taking from defendant St. Louis orders which it had acquired as to defeat his right of recovery. [1 Am. and Eng. Ency. of Law (2 Ed.), 1102; Mechem, Agency, sec. 252; Paul v. Minneapolis Threshing Machine Co., 87 Mo. App. 647.] What view the trial court took of the law of the case is not disclosed by any declarations of law asked or given. In such circumstances we should presume that the court took the correct view of the law and that its verdict is the result of finding the preponderance of the evidence, in respect to plaintiff's agency, was on the side of the plaintiff, and as there is substantial evidence in support of this finding, it is our duty to affirm the judgment. [Desteiguer v. Martin & Kenny, 162 Mo. 417, 63 S. W. 107; State ex rel. v. Staed, 143 Mo. 248, 45 S. W. 50; Bethune v. Railway, 139 Mo. 574, 41 S. W. 213, Rice, Stix & Co. v. McClure & Harper, 74 Mo. App. 383; Ellis v. Railway, 89 Mo. App. 241; Corrigan v. Kansas City, 93 Mo. App. 173.]

The judgment is affirmed. All concur.