# CARRIE D. DAVIS et al., Appellants, v. WILLIAM DAWSON et al., Appellants.

### In Banc, February 18, 1918.

1. **PRESUMPTION OF DEED: Not Pleaded or Ruled.** When the facts warrant it the court will presume the execution and delivery of a deed. But such presumption will not be indulged on appeal, if such issue was neither pleaded nor ruled nor relied upon in the trial court.

2. ————: **Prima-Facie Case: Appellate Rule.** When a prima-facie case is made by plaintiffs, and no instructions are asked or given, the appellate court will not review the evidence for the purpose of determining its sufficiency to overthrow that prima-facie case And plaintiffs in an action to quiet title make a prima-facie case by showing a perfect paper title in themselves, and where they have done that and the trial court sitting as a jury has found that they are entitled to recover the land, the appellate court will not rule, on defendants' appeal, that the evidence establishes a presumption that plaintiffs' ancestor had executed and delivered a deed to defendant's ancestor; for the burden of overcoming the prima-facie case and of establishing the presumption was on defendant, and it is not the province of the appellate court to say that the evidence did actually do that, in the face of a finding by the trier of the fact to the contrary.

3. **LIMITATIONS: Thirty-Year Statute: Necessary Facts.** Where plaintiffs have made a prima-facie case of ownership of the land by showing the paper title to be in them, it becomes necessary for defendants, in order to overthrow that case and establish ownership in themselves under the thirty-year Statute of Limitations, to prove that for a period of thirty consecutive years plaintiffs, either themselves or by some one under whom they might claim, had no possession of the land, had paid no taxes thereon, had failed to bring suit within one year thereafter, and that defendants were in lawful possession.

4. ————: ————: **Lawful Possession: No Color of Title: Part of Tract.** Possession without color of title is confined to the part actually occupied; and where defendants have no color of title, and the evidence establishes a paper title in plaintiffs, it becomes necessary for the trial court to determine from all the evidence what part of the tract the defendants are actually occupying and are entitled to claim under the thirty-year Statute of Limitations. Judgment cannot be rendered for them, under such circumstances and in view of that statute, for so much of the tract as they have not had in actual possession.

Davis v. Dawson.

5. ———: ———: **Payment of Taxes.** The proof of the non-payment of taxes for thirty years is not limited to direct evidence; it may be established by circumstantial evidence. And the circumstances of this case were such as to amount to substantial evidence that neither plaintiffs nor those under whom they claim had paid any taxes for thirty years.

6. ———: **Remaindermen: Renunciation of Will: How Shown: Minute of Filing: Admission.** The minute or docket entry made in the record of the proper court, reciting that the widow files her renunciation of her husband's will, which gave her a lifetime interest in one-fifth of his real estate, remainder to plaintiffs, is not only evidence that a proper writing purporting to be a renunciation of the will was filed, but is a solemn admission, binding on her and the remaindermen, that the will was renounced, and when followed by long years of acquiescence and treated both by her and them as valid and binding, is evidence that the renunciation was in proper form, duly executed and acknowledged; and such evidence, uncontradicted, bars the remaindermen to assert the Statute of Limitations did not begin to run against them during her life.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard,* Judge.

AFFIRMED.

*John A. Hope, Leslie C. Green* and *Ernest A. Green* for plaintiffs.

(1) The record title to all of the lands in controversy was in the plaintiffs and they were entitled to recover all of the lands in controversy, unless barred by the provisions of Sec. 1879 or 1884, R. S. 1909, known as the ten and thirty year Statutes of Limitations respectively. The sheriff's deed from Thomas H. Dawson, to George W. Dawson, dated April 20, 1857, and recorded April 24, 1857, was effectual to convey to George W. Dawson all title to the lands described therein that said Thomas H. Dawson might have had therein at that date. Davis v. Kline, 76 Mo. 310; Ellis v. Jones, 51 Mo. 180; Stewart v. Severance, 43 Mo. 322; Union Bank v. McWharters, 52 Mo. 34; Lewis v. Morrow, 89 Mo. 174; Block v. Morrison, 112 Mo. 343; Price v. Real Estate Assn., 101 Mo. 119 Davis v.

Peveler, 65 Mo. 189; Randall v. Snyder, 214 Mo. 23. (2) The trial court erred in holding that the plaintiffs were barred from recovering any portion of the lands in controversy by virtue of the provisions of Sec. 1879, R. S. 1909, known as "the ten-year Statute of Limitations." The testimony wholly failed to show that there had been actual, open, hostile, exclusive and continuous possession under claim of ownership of any portion of the lands in controversy, by defendants or other ancestor, Thomas H. Dawson, for any period of ten consecutive years. Cook v. Farrah, 105 Mo. 492; Meier v. Meier, 105 Mo. 411; Wilkerson v. Thompson, 82 Mo. 317; Nye v. Alfter, 127 Mo. 529; Hunnewell v. Adams, 153 Mo. 440; McCune v. Goodwillie, 204 Mo. 306. (3) The trial court's judgment is in the face of the law as declared by it in declaration of law number five. In order for plaintiffs to be barred from recovering by the provisions of Sec. 1884, R. S. 1909, known as the thirty-year Statute of Limitation, the proof must have shown (which it did not) that the defendants and their ancestor, Thomas H. Dawson, or some person other than the plaintiffs or their ancestor, had been in actual possession of the lands in controversy for some period of thirty-one consecutive years prior to the filing of this suit; since, during the time that there was no actual possession by any person, the record title of plaintiffs drew the constructive possession to them, and placed them in possession within the meaning of the provisions of the above section. Weir v. Lumber Co., 186 Mo. 388; Hall v. French, 165 Mo. 442; Sell v. McAnaw, 158 Mo. 471; Stone v. Perkins, 217 Mo. 246. (4) There was not sufficient testimony to show that neither the plaintiffs nor those under whom they claim had paid any taxes on the land in controversy for a period of thirty years prior to the bringing of this suit; therefore the provisions of Sec. 1884, R. S. 1909, have no application to this case, and the plaintiffs are not barred by the thirty-year Statute of Limitations. (5) Even if the thirty-year Statute of Limitations had any bearing upon this case, as we deny, still defendants'

possession could not be extended beyond what land they have actually been in possession of for more than one year prior to the filing of this suit. In other words the provisions of Sec. 1882, R. S. 1909, relative to color of title, do not apply to the thirty-year statute. Collins v. Pease, 146 Mo. 135; De Hatre v. Edmonds, 200 Mo. 246; Scannell v. American Co., 161 Mo. 619; Crispen v. Hanahau, 50 Mo. 536; Stevenson v. Black, 168 Mo. 549; Schultz v. Lindell, 30 Mo. 310; Ivy v. Yancey, 129 Mo. 501. (6) The Court erred in not rendering judgment in favor of the plaintiffs for all of the land known as the Miller Tract. As to this land defendants could not recover, as they had no paper title whatever to the same and there was no showing of a sufficient possession to justify a recovery on their part by virtue of limitations. Pharis v. Jones, 122 Mo. 125; Sec. 1882, R. S. 1909; Schultz v. Lindell, 30 Mo. 310; Fugate v. Pierce, 49 Mo. 441; Wilson v. Purl, 148 Mo. 449. (7) The fact that these lands or any portion thereof were subject to overflows from the Mississippi River cannot aid the defendants in their defense of either the ten or thirty year Statute of Limitations, since those statutes only confer title upon those who are in actual possession for the requisite length of time, and during the time that said lands were overflowed and there was no actual possession thereof by any one possession was constructively in the holders of the legal title to said lands. Western v. Flanagan, 120 Mo. 61.

*James A. Seddon* also for plaintiffs.

(1) The lower court found against the defendants on the issue of facts whether or not there was a lost deed as claimed. The record shows that there was no evidence of a conclusive nature that such a deed had ever existed. The presumption of such a deed, if any, must be predicated on the alleged facts shown by the witnessess of the defendants. None of this evidence was admitted to be true and much of it was contradicted by the witnesses of the plaintiffs. Hunter v. Wething-

ton, 205 Mo. 284. The defendants asked no instructions and excepted to no ruling of the trial court during the progress of the trial. They rely on no error of law in their brief. They can and do only complain that the finding of the court, in awarding a part of the lands to the plaintiffs, is against the weight of the evidence, which they contend shows that Wash Dawson made a deed not recorded but now lost, to Thomas H. Dawson, conveying to him all these lands. This being an action at law, this court cannot disturb the finding of the trial court on that issue. Slicer v. Owens, 241 Mo. 319.   (2) The trial court under the principle of color of title applied to the thirty-one year statute, found in favor of the defendants for all of the Netherton Tract. We concede that the doctrine or principle of color of title whereby the possession of a part of a tract of land is extended by construction to a whole tract, as declared in Sec. 1882, R. S. 1909, applies with the same force and in the same manner to the thirty-one year Statute of Limitations as it does to the ten-year statute. Keaton v. Hamilton, 264 Mo. 564. But it applies with no greater force. While it is applicable to a proper case under this statute, it has no application under the facts of this particular record. No question of color of title can possibly arise touching the claim of the defendants to the Miller Tract, for they never had any paper or record title to it. But the court erred in its application of the doctrine of color of title to the claim of the defendants to the Netherton Tract under the thirty-one year Statute of Limitations. By its application it found that by reason of the possession by the defendants of a part of the Southwest fractional quarter of section 6 for a year, and the exercise of acts of ownership over the rest of the Netherton Tract, the possession of the part of the tract drew to it by construction, the possession of the whole, to which the title of the defendants was perfected by the judgment. It is beyond dispute that there was no actual possession or claim of such possession of any part of the Netherton Tract except that part of the Southwest fractional quarter of section 6, which was fenced by Dr. George

W. Dawson since 1904. All the rest of it was and is unfenced, wild or timber land, and if the defendants are to recover in this case any part of that tract not now fenced, it must be by the doctrine of color of title. Thomas H. Dawson could assume the relation of an adverse claimant of the lands, only by some unequivocal act of disseisin, and ouster, equivalent to an entry, and of such a nature as *to surely advise* Wash Dawson of the fact of the change of the permissive relation. In making that act of disseisin or ouster of Wash Adams, if it was made at all, the heirs of Thomas H. Dawson had no title or deed to constitute color of title. We must distinguish in this case between possession under a claim of title and under color of title. "The distinction lies in the *quantum* of the land possessed. As in the case of the real title, a constructive possession attaches itself to color of title." Title to land by adverse possession without color of title will be confined to the part actually occupied. Rannels v. Rannels, 52 Mo. 108. Constructive possession of a whole tract by reason of actual possession of a part is never based upon a "claim of title" merely. That there shall be color of title there must be a deed purporting to convey the whole or some proceeding or instrument giving color and defining boundaries as well as active possession of a part. Slicer v. Owens, 241 Mo. 319; Fugate v. Pierce, 49 Mo. 441; Long v. Higginbotham, 56 Mo. 245; Allen v. Mansfield, 108 Mo. 343. (3) The trial court erred in overruling the objection of the plaintiff to the introduction in evidence of the inventory of the estate of George W. Dawson. It is true that it showed that these lands had not been inventoried. But this merely showed a breach of duty of the executrix. For it is the duty of the legal representative to inventory all the real estate, of which the title appears of record and leave the question of a better right in another, to the courts. It was not shown that the executrix ever took possession of the real estate or that there was ever any order on her to do so. Therefore even a positive declaration as to

the title by her in the inventory could not have bound the heirs or in any wise have affected their rights in the land, either favorably or prejudicially. (4) There was no evidence that Laura A. Dawson had not paid taxes on these lands in thirty years prior to July 1, 1904. She might have paid them between 1884 and 1893 for aught to the contrary shown by the record. She had an interest in the lands either as a life tenant or as doweress. In either capacity her payment of the taxes would have inured to plaintiffs' benefit. Statutes of Limitations are based on public policy. For its sake the law permits what is confessedly a wrong to ripen into a right. It is not for any merit of the claimant, for whom the law has no tender solicitude. The burden is on him to make out his case. No presumptions are indulged in his favor, and he must bring clear and positive proof of his claim. Lynde v. Williams, 68 Mo. 360. (5) The trial court erred in vesting the absolute fee simple title to the Netherton Tract in the defendants under the theory that the plaintiffs were barred by the Statutes of Limitations. Neither the ten-year statute nor the thirty-one-year statute begins to run against remaindermen until the death of the life tenant. Hall v. French, 165 Mo. 430. Under the will of Wash Dawson his widow, Laura A. Dawson, having remarried, was entitled to a life estate in one-fifth of these lands, with remainder to these plaintiffs. She was alive at the institution of this action. She died before the trial. But the defendants will say that she renounced the will of her husband. No renunciation was shown in evidence. The defendants, however, did read in evidence over the objection of the plaintiff's, an entry of the probate court of New Madrid County reciting: "Now comes Laura A. Dawson and by attorney files her renunciation of the provisions of the will of her deceased husband." But this entry purports to be a mere memorandum of the filing of an instrument and if it had purported to be a judgment binding in any way upon these plaintiffs, it could have no force. Brannock v. McHenry, 252 Mo. 1. The law does not

require or contemplate any judicial action of the court on the renunciation. It it not even necessary to "file" it in court. A will can be renounced in but one way: by a writing duly executed and acknowledged as a deed of lands and filed in the office of the clerk of the probate court. Sec. 361, R. S. 1909. The writing itself is only evidence of the renunciation. Of course, under proper circumstances it may be proved by secondary evidence. But it was not produced and there was no attempt to prove it or to account for its absence.

*James R. Brewer* and *Wilson Cramer* for defendants.

(1) Defendants allege in their answer and have shown that they were in the lawful possession of the premises in controversy on the 1st day of July, 1904, and that neither the plaintiffs, nor anyone under whom they claim, or might claim, have been in possession of the same, or any part thereof, for more than thirty years prior to that date and have not paid any taxes on any part of said land during that period. By virtue of the thirty-year statute whatever right and title plaintiff had, if any, was forfeited and vested in defendants, who were therefore entitled to judgment for the whole of the Miller Tract, as well as for the Netherton lands. R. S. 1909, sec. 1884; Campbell v. Greer, 209 Mo. 199. (2) Plaintiff's ancestor, George W. Dawson, died in 1862. He was never in possession of any part of the land in suit and made no claim thereto in his lifetime, nor was any asserted by his heirs until the institution of the present suit in 1909. Thomas H. Dawson remained in possession of the land from 1856, claiming to be the owner, until his death in 1906, notwithstanding, as it now transpires, that the record title was in his brother, George W. Dawson. What occurred between these two brothers in 1857—more than fifty years before this suit was brought—no one knows. Their relations were most cordial; they were neighbors. Under the evidence in this cause the court

below after this great lapse of time, should have indulged the presumption of the execution of a conveyance by George W. Dawson to Thomas H. Dawson and should have given judgment in favor of the defendants for all of the land involved. Brown v. Oldham, 123 Mo. 631; Manning v. Coal Co., 181 Mo. 359; Glasgow v. Car & Foundry Co., 229 Mo. 599; Johnson v. Timmons, 50 Tex. 335. (3) Citing in conclusion, as directly applicable to this case the case of Hubbard v. Slavens, 218 Mo. 615, these appellants submit that the judgment of the court below should be reversed with directions to enter judgment in their favor for all of the lands involved.

CHARLES H. MAYER, Special Judge.—Plaintiffs are the three daughters and the son of George W. Dawson. On August 26, 1909, they brought this suit in the circuit court of New Madrid County, making the four sons and the daughter of Thomas H. Dawson defendants, for the purpose of determining and quieting the title to five hundred and seventy-nine acres of land lying in said county. On change of venue the cause was transferred to Butler County, where on May 3, 1911, judgment was rendered.

George W. Dawson and Thomas H. Dawson were brothers. Prior to 1857 and until their death, they resided in New Madrid County, where all of the plaintiffs and all of the defendants were born, and where all of them continue to reside. The land in controversy is located on the Mississippi River and is near the town of New Madrid, in which town, or in the vicinity of which, all of the parties to this suit have spent their lives. The land lies together, but is referred to in the record as the Netherton Tract, containing four hundred and nineteen acres, and the Miller Tract of one hundred and sixty acres. Title to all of the land emanated from the United States Government more than thirty years before the filing of this suit.

In 1847 Thomas H. Dawson became the record owner of the Netherton Tract. On April 20, 1857, the

Netherton Tract was sold under execution and conveyed by sheriff's deed to George W. Dawson, who on August 7, 1856, had obtained title to the Miller Tract by conveyance from one Miller, the then record owner.

On November 5, 1856, George W. Dawson conveyed the Miller Tract to Henry Clay Watson, who on April 7, 1857, re-conveyed that tract to George W. Dawson. Thus the record title to all of the land came to George W. Dawson, and in him it remained until his death in 1862, when is vested in these plaintiffs, his children, who still retain it.

The defendants, laying no.claim to paper title, pleaded, by amended answer, 1st, the ten-year Statute of Limitations, and, 2nd, such facts as to give them title acquired by virtue of the thirty-year Statute of Limitations.

From the evidence we adduce that Thomas H. Dawson, who died in 1906, moved onto the land in controversy in the early fall of 1856, and, although the record title to the Miller Tract was then in his brother, George W. Dawson, or for a short time in Henry Clay Watson, Thomas H. Dawson set about clearing a part of that tract, built a house thereon, and erected a saw-mill on the Netherton Tract.

Prior to moving onto this land, Thomas H. Dawson had lived with his mother on the old Dawson homestead in or near the town of New Madrid. The mother died in August, 1856, and soon thereafter Thomas H. Dawson moved from the old homestead to the land in question, and his brother George W. moved into the old homestead and continued to reside there until his death in 1862. Although George W. Dawson obtained title to the Netherton Tract in 1857 under the sheriff's deed heretofore referred to, so that he then held title to all of the land, he never took possession of any of it, and for more than two years Thomas H. Dawson continued to reside in the house which he had built on the Miller Tract, continued his clearing and the operation of a saw-mill and wood-yard on the Netherton Tract, from which wood-yard he sold cord wood to the steamboats plying

the Mississippi River. In 1859, being driven away by the overflow of the river, he moved to New Madrid, where he remained until his death.

All of the land was and is subject to overflow, the water covering it to a depth of from five to fifteen feet, frequently standing thereon for several weeks. There were few successive years from 1856 until the trial that the land did not overflow. While he resided on the land in controversy, Thomas H. Dawson stated to friends that he had gone there to make his permanent home. After moving back to New Madrid, he continued to speak of the land as his, and there is no testimony that any other person laid any claim to it until within a few years before this suit was brought. Soon after Thomas H. Dawson moved to New Madrid, the house which had been built on the Miller Tract was torn down and moved away, but at some time later a house was built on the Netherton Tract by him, or by some of his sons for him, and that house was on the Netherton Tract at the time of the trial.

From 1857 until the trial, Thomas H. Dawson or some of his sons, on occasions, sold timber off the land; at intervals they had tenants there who cultivated a small portion of the Miller Tract on shares; piling, staves and saw logs were sold from time to time off the Netherton Tract. Because of the frequency with which the land overflowed, it was impossible to cultivate any of it continuously, but various tenants were put on the place to clear it, to cut cord-wood and saw-logs and to raise stock. Thomas H. Dawson had all of the land surveyed in the eighties in order that he might determine whether or not those cutting timber about the land were encroaching upon it.

It is certain that at least some of the plaintiffs did not know that plaintiffs ever had any interest upon which to base a claim to the land until Mr. Lee Hunter tried to buy the interest of Clay Dawson, one of the plaintiffs, which was very shortly before this suit was brought. If the mother of plaintiffs, who had remarried in 1867, had any knowledge of their interest in the land,

it is certain that she had not conveyed the information to her daughter, Mrs. Jackson, who first heard of it at the time of the attempted purchase just referred to, and there is no evidence that the mother ever communicated such information to any of her children. The inventory of her husband's estate, of which she was executrix, contained a long list of real estate owned by him, but made no mention of the land in controversy. All of the plaintiffs testified that no taxes had been paid by them; there was no testimony that their mother had paid taxes on this land. William Dawson, one of the defendants, who was collector from 1870 until 1874, testified that during that time he paid the taxes. Robert Dawson, another defendant, who succeeded William Dawson as collector and served as such until 1880, testified that during that time he paid the taxes. R. J. Waters, who followed Robert Dawson as collector and served as such from 1880 until 1884, testified that during that time Robert Dawson paid the taxes. Mr. Neal and Mr. Steele, who successively followed Mr. Waters in the office of collector, were dead at the time of the trial. H. E. Broughton, who was the collector at the time of the trial and who had held that office continuously since 1894, testified that the defendants had paid the taxes during all of that time.

In about 1904, Doctor Dawson, one of the defend-ants, and his son were in charge of the place under Thomas H. Dawson; and the defendants, through Dr. Dawson, occupied the house which had been built on the Netherton Tract from that date until the trial; they fenced a woods pasture on the Netherton Tract and fenced and cultivated twenty-seven and one-half acres on the Miller Tract. They salted their stock on the Netherton Tract and used it for grazing their hogs and cattle.

The cause was submitted to the court sitting as a jury and the court found for the defendants as to all of the Netherton Tract and twenty-seven and one-half acres of the Miller Tract, that being the portion of the Miller Tract which had been fenced and cultivated by

Dr. Dawson, and the court entered judgment quieting the title to that much of the land in the defendants. The court found for the plaintiffs as to the remainder of the Miller Tract, and entered judgment quieting title to it in the plaintiffs. From this judgment both the plaintiffs and the defendants appealed.

We shall first dispose of defendants' assignment of errors. Finding fault with the court's failure to award all of the land to them, they contend that the

Defendant's judgment should be reversed with directions
Case. to the trial court to enter judgment quieting title to all of the land in controversy in them, because, they urge, that the court erred in failing to presume that after April, 1857, a deed was executed by George W. Dawson to Thomas H. Dawson conveying all of the land in controversy.

All will agree that, when the facts warrant it, precedent and sound reason justify the court in presuming the execution and delivery of a deed. [Dessaunier v. Murphy, 22 Mo. 95; Brinley v. Forsythe, 69 Mo. 176; Manning v. Coal Co., 181 Mo. 359; United States v. Chavez, 175 U. S. 509.] But, admitting this, as must be done, and conceding, without deciding, that the facts in this case would have justified the trial court in indulging the presumption of a deed, defendants' contention cannot be sustained for two reasons:

(a) No such issue was tried in the court below. In their original answer defendants "admit that they claim title to the real estate and allege that they own the same in fee." But defendants filed an amended answer in which their only claim to the land was based upon the ten-year Statute of Limitations, which claim is not insisted upon here, and upon the thirty-year Statute of Limitations. When these answers and the whole course of the trial are considered, the conclusion seems inevitable that defendants below not only did not rely upon the presumption of a deed, but that they deliberately determined not to present that question, and to rest their case on Section 1884. Nowhere in the record before us except in the abandoned answer, is there the

slightest suggestion or intimation that defendants, the plaintiffs, or the trial court even thought of the presumption of a deed. Having chosen to eliminate the question in the trial court, defendants cannot now have a reveral, because it was not considered. This is a court of review; unless a question has been so presented in the trial court as to call for action by that court, there is no action to review. [Laclede National Bank v. Richardson, 156 Mo. 270; State ex rel. v. Chick, 146 Mo. 645; Walker v. Owen, 79 Mo. 563.]

(b) This case was tried before the court sitting as a jury. Plaintiffs made a prima-facie case when they showed the paper title to be in themselves. If, for argument, it be conceded that the question of the presumption of a deed was mooted below, the burden was upon the defendants to prove the facts upon which the presumption could rest.

No instructions were asked or given upon this branch of the case and from the court's judgment it is apparent, conceding that the question was in issue, that the court sitting as a jury found that the defendants had not so carried the burden of proof as to justify the court in invoking the presumption. The rule has been firmly established in this State that when a prima-facie case is made by plaintiffs, and no instructions are asked or given, the appellate court will not review the evidence for the purpose of determining its sufficiency to overthrow plaintiffs' case. As typical of the many cases in which this rule has been stated and applied, see Ess v. Bouton, 64 Mo. 105; Bethune v. Railroad, 139 Mo. 574; Zimmerman v. Railroad, 156 Mo. 561. The rule applies with aptness to this branch of the case at bar.

Defendants' contention that the court erred in not holding that, as stated by them, "by virtue of the thirty-year statute whatever title plaintiffs had was forfeited and vested in defendants, who were therefore entitled to judgment for the whole of the Miller Tract, as well as the Netherton Tract," must be ruled against them.

Plaintiffs having made a prima-facie case of ownership of all of the land, it became necessary for defendants, in order to overthrow that case, to prove that for a period of thirty consecutive years plaintiffs or someone under whom they might claim, had no possession of the land, had paid no taxes thereon, had failed to bring suit within one year thereafter, *and that defendants were in lawful possession.* It is conceded that neither the plaintiffs nor any person under whom they might claim, ever had possession of any part of the land, and the evidence apparently satisfied the trial court that no taxes had been paid by plaintiffs for the thirty-year period. But it is quite as apparent that the trial court did not find that defendants were in possession of *all* of the land. Defendants' evidence tended to prove that they were in possession of all of it, but that they had fenced only the cleared field on the Miller Tract, and they had by that fence joined the cleared field with the fenced clearing on the Netherton Tract where stood their house and barn. It will be borne in mind that at no time did defendants ever have any color of title to the Miller Tract. Possession without color of title is confined to the part actually occupied. [Rannels v. Rannels, 52 Mo. 108.] It was for the trial court to determine from all of the evidence what part of the lands defendants were occupying. The evidence of the defendant's possession of the whole of the Miller Tract was not such as to justify this court, as a matter of law, in holding that they were in possession of all of it. Upon the evidence reasonable minds might well differ as to whether or not defendants were in possession of any part of the Miller Tract, except the twenty-seven and one-half acres fenced. The question was one of fact. It was determined by the trier of fact against defendants, except as to the twenty-seven and one-half acres which defendants had fenced, and except all of the Netherton Tract. There being substantial evidence upon which to base the finding, the authorities in this State are unanimous in holding that this court will not weigh the evidence.

273 Mo.—33

Attending the errors alleged by plaintiffs: Their chief contention is that there was no evidence that plaintiffs, or any person under whom they might claim, had not paid the taxes for thirty consecutive years, and that, therefore, there was no evidence to sustain the court's judgment awarding part of the land to defendants.

**Plaintiff's Case.**

The evidence not only shows conclusively that for more than thirty years none of the plaintiffs themselves paid any taxes, but there is direct evidence that the defendants did pay the taxes from 1870 until 1884, and from 1894 until the time of the trial. There is no direct evidence as to who paid the taxes during the ten years from 1884 until 1894. The persons who held the office of county collector during those years had died prior to the trial. Defendants were not limited to direct evidence; the non-payment of taxes for thirty years may be proved by circumstantial evidence. [Campbell v. Greer, 209 Mo. 199; Land & Imp. Co. v. Epright, 265 Mo. l. c. 217.]

A review of this question by this court is limited to a determination of whether or not the circumstances furnished any substantial evidence upon which the court's finding of non-payment of taxes could be predicated; was there evidence from which non-payment of taxes could be legally inferred? All of the plaintiffs testified that no taxes were paid by them. There is no evidence that their mother paid such taxes at any time, and she is the only person that plaintiffs have suggested as being likely to have paid them. No witnesses had ever heard her claim any interest in the land; her own daughter who had lived in the vicinity of the land all of her life had never heard of any interest owned by plaintiffs until shortly before suit was filed; she heard of it through the attempted purchase by Mr. Lee Hunter of Clay Dawson's interest. The inventory of George W. Dawson's estate shows that if plaintiffs' mother knew of her husband's ownership of the land, she failed to include it in the inventory of her husband's estate. It seems certain that she paid no taxes from

1870 to 1884, and from 1894 to 1909, when she died. The evidence strongly indicates that she either knew nothing or cared nothing about this land. Her interest was surely no greater than that of her four children, who admitted that they had paid no taxes on the land and who had never shown the slightest interest of any character in the land until shortly before this suit was brought.

With the foregoing circumstances in mind, one cannot say that there was no substantial evidence upon which to predicate a finding of the non-payment of taxes during the thirty years.

One other alleged error is pressed by plaintiffs as grounds for reversal.

George W. Dawson left a will by which he devised to his wife for life, remainder to his four children, a one-fifth interest in his real estate, and provided that until she should remarry she should have the right to use and occupy all of his real estate, the residue of which was devised to his four children, plaintiffs in this action. The widow, Laura A. Dawson, remarried in 1867, and died shortly after this suit was brought.

Defendants introduced the following minute from the record of the county court:

"New Madrid County Court, May term, 1863, Thursday, the fourteenth day of the month. Court met pursuant to adjournment. Present the same justices as yesterday.

"1. Now comes Laura Dawson, widow and relict of G. W. Dawson, and by attorney files her renunciation of the provisions of the will of her deceased husband."

Proof of the will of George W. Dawson was made in the county court of New Madrid County on September 16, 1862. On that date, and on May the 14th, 1863, when the foregoing minute was made, the county court was fully possessed of jurisdiction in all probate matters. The provisions of the statute then in force relative to land passing by will in lieu of dower, and

for the renunciation of wills, were contained in sections 15 and 16, chapter 56, Revised Statutes 1855, and were literally the same as the provisions covering those subjects now appearing in Sections 360 and 361, Revised Statutes 1909.

Upon this state of facts, plaintiffs make the contention, as stated by them, that "under the will of George W. Dawson, his widow Laura Dawson, having remarried, was entitled to a life estate in one-fifth of the lands, with the remainder to these children. She was alive at the institution of this action; she died before the trial. . . . No renunciation was shown in evidence." Therefore, plaintiffs say, that until the death of Laura A. Dawson, the thirty years' statute did not begin to run against the remaindermen as to the undivided one-fifth interest devised to her for life.

The county court was the proper court in which to file renunciation. In order to give validity to the renunciation it was necessary to file it there. The record of the filing was full and complete. Under such circumstances, the minute or docket entry of the county court was admissible as evidence of the fact that a paper writing purporting to be a renunciation was filed on the 14th day of May, 1863. [Philadelphia, Wilmington & Baltimore Railroad v. Howard, 13 How. 307; Arundell v. White, 14 East, 215, 104 Eng. Rep. (Full Reprint) 583.]

Indeed, plaintiffs do not controvert this proposition. Their objection is that while the record may be sufficient to prove the filing of a writing purporting to be a renunciation, it cannot be taken as evidence that the writing was in form, duly executed and acknowledged, as required by the statute.

This entry was made in open court for the benefit of Mrs. Laura Dawson, in her presence and at her request. It recites that she did what she was attempting to do.

If Mrs. Dawson were in court asserting some right under the will, the recital in the county court's records

would be competent evidence, *as her admission,* and sufficient to show prima-facie that she had renounced the will.

"A record may also be admitted in evidence in favor of a stranger, against one of the parties, as containing a solemn admission, or judicial declaration by such party, in regard to a certain fact. But in that case it is admitted not as a judgment conclusively establishing the fact, but as the deliberate declaration or admission of the party himself that the fact was so. It is therefore to be treated according to the principles governing admissions, to which class of evidence it properly belongs." [1 Greenleaf on Evidence (16 Ed.), sec. 527-a.]

In the case at bar, the plaintiffs, in asserting for their own benefit that their mother had a life estate in one-fifth of the land in controversy, that is, that she did not renounce the will, are in no better position than she would be were she making the assertion.

Furthermore, this record was made forty-eight years before the case at bar was tried. There is no evidence that at all times the renunciation had not been treated as valid and binding, nor that it had not been acted upon as such. This suit was brought during the mother's lifetime; she was not made a party; the plaintiffs alleged that they owned the entire estate, both legal and equitable in said real estate, and every parcel thereof. Had plaintiffs not recognized the mother's renunciation, made almost fifty years before the suit was brought, as good and sufficient, they would have known that, as to her one-fifth life interest, their suit was being prematurely brought. Under such circumstances, and after so long a time has elapsed, the court is justified in presuming that in filing the renunciation the regular and natural order of business was observed. [Long v. The Joplin Mining & Smelting Company, 68 Mo. 1. c. 432; Williams v. Mitchell, 112 Mo. 1. c. 313.] The judgment is affirmed.

*Graves, C. J.,* and *Bond, Walker* and *Blair, JJ.,* concur; *Williams* and *Woodson, JJ.,* concur in result: *Faris, J.,* did not sit.